Shirley Ann ROBINSON, by her Next Friend, Flora Robinson, Plaintiff-Respondent,

v.

SOUTHWESTERN BELL TELEPHONE COMPANY, a Missouri Corporation, Defendant-Appellant.

No. 32923.

St. Louis Court of Appeals.

Missouri.

Oct. 15, 1968.

Motion for Rehearing or to Transfer to Supreme Court Denied Nov. 25, 1968.

Dearing, Richeson, Weier, Roberts & Wegmann, Hillsboro, John Mohler, Jean Charles Smith, St. Louis, for defendant-appellant.

Schnapp, Graham & Reid, Fredericktown, for plaintiff-respondent.

BRADY, Commissioner.

This action for personal injuries plaintiff alleged she received as a result of having been struck by lightning during a thunder storm and injured due to defendant's negligence resulted in a jury verdict for plaintiff on which the trial court entered judgment in the amount of $15,000.00. Defendant appeals alleging error by the trial court in overruling its motion for a directed verdict, in admitting certain evidence, and that the judgment is void on the grounds that the verdict was not sufficient to sustain it. Since the last contention goes to the jurisdiction of this court we will set out the facts pertaining thereto and our ruling thereon before proceeding to the other issues involved.

It appears from the transcript that two forms of verdict were submitted to the jury when it retired to begin its deliberations. When the jury first returned to the courtroom and submitted their verdict they were informed by the court: "* * * Ladies and gentlemen, we cannot accept it in the form as given. I will have to ask that you return to your juryroom and put your verdict on one of these forms, if you please. Take the instructions and the verdict forms. But one of those verdict forms should serve your purposes. Do you understand what I mean, Mr. Foreman? A JUROR: This one. THE COURT: Yes, if you please. You see, your verdict is on an instruction instead of a verdict form." What had happened was that nine members of the jury had signed their names below the typewritten portion of plaintiff's verdict directing instruction. The jury thereupon retired for further deliberation and upon returning to the court a second time the following occurred: "THE COURT: I must again ask if you have arrived at your verdict? A JUROR: Yes, sir. THE COURT: 'We the jury voted to award Mrs. Shirley Leners $15,-000.00.' Is that the verdict of each of you twelve, all twelve of you? The verdict must be in proper form. It will be acceptable, the nine that agree on the verdict, whatever it may be, must sign on one of these verdict forms. See, we can't accept this on the instruction. The verdict must be on—And it will require the signatures

of those members of the Jury that concur in that verdict. I'm sorry to cause you this much trouble but it is a detail that is required by law." It appears from the exhibits what the jury had done was to take the plaintiff's verdict directing instruction, which nine of them had signed and attempted to return as a verdict, and below their signatures one of them had written the following: "And Voted to Award Shirley Lender 15000 Fifteen Thousand Dollars." The jury retired for a third time and when they returned submitted a verdict which was received and filed by the court after it had polled the jury. This verdict was on one of the regular verdict forms submitted to the jury when they first retired. It read: "We, the jury, find the issues in favor of the plaintiff, and assess plaintiff's damages at $_____." Below that appeared a signature line with the word "Foreman" typed below it. As returned by this jury the verdict form was signed by the foreman on the line provided for his signature but the blank left for the dollar amount was not filled in. On this same verdict form in someone's handwriting the following appears below the foreman's signature: "The Jury", and below that again in longhand appeared: "The Jury Voted to Award Mrs. Shirley Leners 15000 Dollars". This was followed by the signatures of the same nine jurors who had signed the instruction which they attempted to return as a verdict on their first return to the courtroom. Defendant's objections to the receipt of this verdict were properly stated and timely made.

 Section 510.230, RSMo 1959, V.A.M.S. and Civil Rule 71.02, V.A.M.R., provide for the rendition of a general verdict; i.e., a finding or pronouncement by the jury on all issues submitted to it including that of damages. Thorne v. Thorne, Mo., 350 S.W.2d 754, l.c. 757. Defendant's contention is that the verdict as received by the court is really two verdicts, the first of these being the typewritten portion of the verdict form as signed by

the foreman of the jury. Defendant insists this has no validity whatever for the reason that it does not dispose of the issue of damages (see Boone v. Richardson, Mo.App., 388 S.W.2d 68) and because it is admitted by all concerned that this was not a unanimous verdict and therefore the foreman's signature is of no effect. See Thorne v. Thorne, supra. We agree. Defendant regards the handwritten portion of the verdict form as constituting a second verdict and contends it was insufficient to support the entry of the judgment on the grounds that it failed to find the issues for the plaintiff. In support of its contention defendant relies upon Thorne v. Thorne, supra. We cannot agree. In Thorne the jury returned to the court a sheet of paper containing the following words and figures: " 'Persnal injuris $31,750.00 Damages $1000.00.' " The distinction we see between the verdict in Thorne and that in the instant appeal is that in Thorne a finding on the issues for the plaintiff could not be interpolated from the words and figures that appeared on the sheet of paper whereas in the instant case the intent of the jury to find for the plaintiff is clearly shown by the words "The Jury Voted to Award Mrs. Shirley Leners 15000 Dollars". A review of the case law on the subject of verdicts is contained in the opinion in Thorne, 350 S.W.2d at l.c. 757 [1–3]. It is unnecessary to include such citations in this opinion, it being sufficient to state we construe verdicts liberally in an effort to ascertain the jury's intent, though that intent be inartfully expressed. In the instant appeal the intent of nine members of the jury to find the issues in favor of plaintiff and to award her $15,000.00 damages clearly appears on the face of the verdict as received by the court and will support the judgment entered.

In connection with the verdict we deem it pertinent to note that although the transcript does not disclose that plaintiff, whose name appears in the pleadings as Shirley Ann Robinson, is the same person as Shirley Ann Linders, no issue has been

raised in that regard. Neither is there any issue raised as to the discrepancy between plaintiff's name as appears in her own testimony, "Shirley Ann Linders", and "Mrs. Shirley Leners" that appears in the verdict.

■ We pass now to those facts bearing upon the defendant's other allegations of error. Defendant's position regarding the trial court's action overruling its motion for directed verdict is based upon its contention plaintiff failed to make a submissible case. In considering this issue we review the evidence in the light most favorable to plaintiff, giving her the benefit of all reasonable inferences and disregarding defendant's evidence unless it aids her case.

On May 18, 1960, plaintiff, then fourteen years of age, was using the telephone in the home of her grandparents in Fredericktown, Missouri. It is undisputed that defendant owned and operated the telephone system in that city and had sole and exclusive control thereof. Plaintiff had placed a call to her grandmother who was employed at a store in that city and was holding the telephone between her shoulder and her ear waiting for her grandmother, who was being paged at the store, to come to the telephone. The telephone "sort of crackled" and she heard it "pop" before she fell to the floor and blacked out. The next thing she remembered was her grandfather coming over to help her off of the floor and attempting to calm her down as she was "screaming real loud". Just below her temple there was a red streak which came down behind her ear and on her shoulder she had two burned places. The red streak continued down her arm to between her fingers. The hair on her arm was all singed and curled as if it had been burned. What plaintiff described as the "web between my fingers" was blackened and split open. Blood was running down her hand. As a result she has had difficulty with hearing in her left ear.

The witness Jennie Lutes testified that on the day of this occurrence she was seated in the swing on the front porch of her house across the street from the home in which plaintiff was then living. She saw a bolt of lightning strike a utility pole which by other evidence was shown to be a joint use pole shared by the City of Fredericktown and defendant, and from which defendant's lines ran into plaintiff's grandparents' house. Mrs. Lutes also testified that at the time the lightning hit the pole her own telephone rang inside of her house and that she heard plaintiff scream.

Defendant's lightning protector box was located outside of plaintiff's grandparents' house. The evidence most favorable to plaintiff was that this box was knocked loose from the siding and "was hanging down off the wall from the wires." There are fuses and carbon blocks located in this box. The carbon blocks are so designed and placed to protect against high voltage and low amperage flows such as lightning. The testimony of the expert was that by separating these carbon blocks by roughly .003" it is possible for lightning to flash through them and go to ground without interrupting the service. It was also testified that once the carbons are activated voltage can come on through the telephone. The carbon blocks in the lightning protector box in the instant case had burnt places on them indicating that a stroke of lightning or some sort of electricity had passed through. Once this happens they may or may not still be serviceable. In the instant case these blocks were removed when the defendant's employees came to repair the telephone the day following this occurrence. On that occasion defendant's employees found the circuitry of the telephone was not operating and the receiver cord was open and inoperative. The receiver unit, the receiver cord, and the mounting cord were replaced in order to make the unit operative. It was later testified the receiver showed evidence that some abnormal high voltage current such as lightning had passed through the receiver unit. There was also testimony to the

effect defendant could have taken other steps to have made the telephone safer for use in an electrical storm.

Defendant's theory was that the electricity which injured plaintiff got into the house when the television antenna was struck by the lightning bolt. Under such theory the charge came down the antenna through the television set jumping from it to the body of plaintiff, through the web of her fingers, up her arm and head, to the telephone set; thereafter passing through the set and mounting cord to the lightning protector box and to ground. Plaintiff's expert witness testified that if lightning struck the television antenna with a sufficient charge to produce some of the damage testified to there would be pits on the antenna with possibly some splitting and etching, and that if it was in sufficient force to do the damage involved in this case he would "even expect a hole". His further testimony was that even if this bolt of lightning struck the antenna almost seven years before the date of his testimony he would still expect the antenna to show evidence of that original strike although of course the marks showing the strike would become less visible with the passage of time. The television antenna was examined by the witness Minton, a television sales and service man, who said he found no burn marks on it.

The plaintiff's expert witness testified in answer to a hypothetical question that it was his opinion a surge of high voltage electrical current came over the telephone line, was partially arrested, and the remainder came through the receiver resulting in plaintiff's injury. It was also the opinion of plaintiff's medical expert that the injuries to plaintiff were due to an electric shock coming over the telephone. He testified he had seen similar types of injuries resulting from lightning coming over a telephone.

The witness Brown was called on behalf of defendant. During his cross-examination the following occurred: "Q Now, since this happened has there been a change in the telephone line leading into the Robinson house? A I do not know. Q Has the telephone company changed its entrance of this line in any respect? MR. RICHESON: I would like for Counsel to identify the time, Your Honor, that he is driving at. MR. SCHNAPP: Q Since, since this—MR. RICHESON: Wait just a moment, please. THE COURT: Let him object. MR. RICHESON: In order to determine whether such evidence might or might not be admissible. THE COURT: No. The objection's overruled. This is cross examination. MR. RICHESON: We object to any attempt showing a subsequent change in the telephone system because it's not admissible in evidence, Your Honor. THE COURT: Overruled. A I do not know." This interchange was followed by questions regarding the location of the pole jointly used by the City of Fredericktown and defendant and from which defendant's wire ran into plaintiff's grandparents' home. The following then appears in the transcript: "Q Now, did this same telephone pole have any electric lines? A I don't know. Q And did this telephone line run to a tree on its way, run through a tree on its way to the Robinson home? A I think it did. Q All right. Now then, you say you drove by there yesterday, is that right? A Uh-huh. Q Now, this telephone line going from this pole into the house of the Robinsons no longer goes through that tree, does it? A I don't know that. Q As a matter of fact it now goes west and then north into the Robinson house? A Well, I think you're right. It hits another drop pole over there. Q So it has been changed since this girl was hurt? A I think that's right, since you mentioned it. MR. RICHESON: I move that evidence be stricken, Your Honor, because it's not competent for any purpose in this case. THE COURT: Overruled. MR. SCHNAPP: Q And this is a porcelain device that holds the line leading into it, isn't it? A That's right. Q And this line has been clipped that's leading into it

and a new line run into the house now, isn't that correct? MR. RICHESON: I want to object—A I don't—I suppose so if it's been—MR. RICHESON: I want to object, Your Honor, if it's been subsequent to the time of this occurrence. THE COURT: Overruled. MR. SCHNAPP: Q You say you would suppose so since the line has been rerouted? A (Witness nodding his head.) Q Your answer is yes? A Yes."

Defendant is bound by the attack he makes upon the submissibility of this case. That attack is limited to one contention and one only. It is that plaintiff in the instant case has the burden not only of offering proof to justify submission of her theory to the jury but must go much farther. As stated in the brief, defendant's contention is: "* * * Plaintiff must show that the lightning entered the premises *through* Southwestern Bell's system and *not* through the television or electric systems." By such argument defendant tacitly concedes plaintiff's evidence was sufficient to submit to the jury the issue of whether the electrical charge that injured her entered her grandparents' house through defendant's lines. As will later appear herein we find such to be the case.

▇▇ We cannot agree plaintiff must bear the burden of disproving defendant's theory of how the charge entered the house. It is interesting to speculate as to whether the fallacy in defendant's argument arises from confusing the situation in the appeal at bar with res ipsa cases wherein plaintiff's own evidence shows there was some other equally efficient proximate cause or from some other cause. In any event, in Frazier v. Ford Motor Co., 365 Mo. 62, 276 S.W.2d 95, l.c. 99, the court quoted with approval from Grindstaff v. J. Goldberg & Sons Structural Steel Co., 328 Mo. 72, 40 S.W.2d 702, where it was held plaintiff failed to make a submissible res ipsa case: " "* * * To make out a case for the application of the doctrine of res ipsa loquitur, *the facts relied on must be such as to reasonably exclude any other hypothesis than that of the negligence claimed. * * ** While it is not necessary that they exclude every possible hypothesis except that of the defendant's negligence (Gordon v. [Muehling] Packing Co. [328 Mo. 123], 40 S.W.2d 693), it is entirely clear that, if two or more inferences can be equally well drawn from them, one of which points to negligence on the part of the defendant as the cause of plaintiff's injury, and the others to causes for which the defendant was in no way responsible, proof of such facts does not make out a prima facie case for plaintiff. * * **' (Italics ours.)" (Emphasis supplied.) It is "the facts relied on" that must reasonably exclude any other hypothesis than that of the negligence claimed. In short, the evidence relied upon by plaintiff to make a submissible res ipsa case must also reasonably exclude any other hypothesis of negligence. Plaintiff's evidence in the instant appeal, if believed by the jury, reasonably excludes any other hypothesis of negligence and if the facts upon which plaintiff relies were believed by the jury (as they obviously were) there could only be one inference reasonably drawn therefrom, not two inferences of equal strength. Indeed, defendant does not otherwise contend. Its argument is that when there is evidence other than that relied upon by plaintiff, which reasonably shows another cause of the injury, no res ipsa case can be made. Such a contention is patently without merit. To so hold would effectively prevent the submission of any res ipsa loquitur case by denying the jury the right to believe or disbelieve any evidence presented to it.

▇▇ In Venditti v. St. Louis Public Service Co., 360 Mo. 42, 226 S.W.2d 599, at p. 601, the court stated the res ipsa loquitur doctrine was "* * * a rule of evidence relating to the method, rather than the burden, of establishing the negligence. It excuses lack of precision in the proof of negligence, and in appropriate instances allows a prima facie inference of negligence against defendant without proof of specific

acts of negligence and casts the burden of going forward with the evidence upon the defendant. It does not permit an inference as to what act produced the injury." To the same effect is another case cited by defendant, Pointer v. Mountain Ry. Const. Co., 269 Mo. 104, 189 S.W. 805, L.R.A. 1917B, 1091. Defendant places reliance upon the last sentence in the quotation from Venditti set out above. But the instant appeal does not involve the issue of whether an inference as to what produced plaintiff's injury can be drawn. To the contrary of any attempt to draw an inference there was direct and substantive evidence as to what caused plaintiff's injury given by plaintiff, the witness Lutes, and the expert who testified in plaintiff's behalf. The Venditti case does have pertinence to this appeal, however, for interpolating the facts of the instant appeal into the law announced in Venditti it is clear that when plaintiff offered her own testimony, that of Jennie Lutes who saw the lightning strike the joint use pole, and that of her expert who testified the charge that injured her came in over the telephone wires, not in any other fashion, she made a prima facie res ipsa case entitling her to the inference of defendant's negligence. Absent plaintiff's reliance upon proof which also showed the injury could have reasonably resulted from another equally efficient proximate cause she was then entitled to go to the jury. As stated earlier there was no such reliance by plaintiff in the instant case; the facts which are alleged to show another equally efficient proximate cause came into the case through evidence offered by defendant and were contradicted rather than relied upon by plaintiff. We believe the instant appeal to be governed by principles announced in Lober v. Kansas City, Mo., 74 S.W.2d 815, l.c. 823, and Pandjiris v. Oliver Cadillac Co., 339 Mo. 711, 98 S.W.2d 969, l.c. 971.

The Lober case was a res ipsa loquitur action against Kansas City for damage to property resulting from water suddenly discharging from a fire hydrant under the city's exclusive control. In that case as in the appeal at bar the contention was raised the defendant should have received a directed verdict on the grounds the plaintiff failed to make a submissible case. In disposing of this issue the court said: "It is claimed that, in this view of the case, the court should have sustained a demurrer to the evidence and directed a verdict for defendant. This, however, is a res ipsa loquitur case, and the plaintiff made a prima facie case of general negligence by showing the facts from which negligence could be inferred by the jury. Since the ruling of this court in Gannon v. Laclede Gaslight Co., 145 Mo. 502, 46 S.W. 968, 47 S. W. 907, 43 L.R.A. 505, the law has been that in such situation the court could not direct a verdict for the defendant, although the evidence of defendant as to the real cause of the damage was uncontradicted and unimpeached. The case was yet one for the jury, which had a right to disbelieve and reject defendant's evidence and find for plaintiff on the inference of negligence warranted by the facts." It is to be noted the defendant's evidence in Lober was "uncontradicted and unimpeached" yet the court held plaintiff made a submissible case. A Fortiori the instant appeal where defendant's evidence was directly contradicted by plaintiff's evidence.

Pandjiris was a res ipsa loquitur action wherein it was alleged defendant owned and had exclusive possession and control of a building from which a brick fell upon plaintiff's head resulting in her injury. Therein the court pointed out the inference of negligence which arises when a prima facie case is made under the res ipsa loquitur doctrine does not disappear on the introduction of rebuttal evidence but "* * * 'that the burden of proof never shifts and that the presumption raised by the doctrine res ipsa loquitur, relating as it does to the burden of proof, remains in the case to the end and will take the case to the jury, notwithstanding the evidence, however probative, given in rebuttal on behalf of the defendant,' citing

Gannon v. [Laclede] Gaslight Co., 145 Mo. 502, 46 S.W. 968, 47 S.W. 907, 43 L.R.A. 505; Bond v. St. Louis-S.F.Ry. Co., 315 Mo. 987, 288 S.W. 777; McCloskey v. Koplar, supra [329 Mo. 527, 46 S.W.2d 557, 92 A.L.R. 641]; Conduitt v. [Trenton] Gas & Elec. Co., supra [326 Mo. 133, 31 S.W.2d 21]. And when all the evidence is in, it is then for the jury to say whether the preponderance thereof is for the plaintiff. Blanton v. Dold, 109 Mo. 64, 18 S.W. 1149; Chaisson v. Williams, 130 Me. 341, 156 A. 154; Crooks v. White, 107 Cal.App. 304, 290 P. 497; Sweeney v. Erving, 228 U.S. 233, 33 S.Ct. 416, 57 L.Ed. 815, Ann. Cas.1914D, 905." The allegation of prejudicial error is without merit.

We pass now to the defendant's contention the trial court erred in admitting the evidence set out earlier in this opinion given by the witness Brown with regard to changes, subsequent to plaintiff's injury, in the telephone lines going into the plaintff's grandparents' home. As stated in Atcheson v. Braniff International Airways, Mo., 327 S.W.2d 112, l.c. 116 [3–5]: "'[I]t is the general rule that, where a dangerous, defective, or improper place, method, or appliance is alleged to have resulted in an injury for which damages are sought to be recovered, evidence that, subsequent to the accident or injury complained of, changes or repairs thereof or thereto were made by the person charged or precautions to prevent recurrence of injury were taken by him, is inadmissible to show antecedent negligence or as an admission of negligence on the particular occasion in question * * * but such evidence may be admissible for other purposes, * * *.' 65 C.J.S. Negligence § 225a; Hickey v. Kansas City Southern Railroad Company, Mo.Sup., 290 S.W.2d 58; Brule v. Mayflower Apartments Co., Mo.App., 113 S.W.2d 1058." As this court said in Gignoux v. St. Louis Public Service Co., Mo.App., 180 S.W.2d 784, l.c. 786, 787[5]: "This testimony did not put before the jury facts from which they could gain an intelligent idea of the conditions at the time of the accident, but did get before the jury evidence of subsequent change in condition, which might have been regarded by them as an admission by defendant of its negligence. Such evidence is not admissible. (Citing cases) The rule adopted in the foregoing cases is based on the theory that if precautions taken could be used as evidence of previous improper conditions, no one, after an accident, would make improvements for that would be used against him. Another theory is that the matter in issue is the condition at the time of the accident, and evidence of conditions subsequent, after changes have been made, bring in irrelevant and collateral matters."

■ Plaintiff contends the trial court did not err in admitting such evidence and offers two alternative arguments in support of her position. She first contends defendant waived its objection by asking this same witness on direct examination about repairs that it did make to plaintiff's telephone. An examination of the transcript discloses the questions asked of this witness on direct examination with regard to repairs were specifically limited to the receiver cord, the receiver unit, the mounting cord, and carbon blocks. There was no question asked about the telephone lines. Accordingly defendant did not waive its objection to an inquiry regarding subsequent changes in the telephone lines coming into the house by its inquiry of this witness with regard to other repairs made. Plaintiff then contends this evidence was admissible to show defendant owned and controlled these wires. But this was not a controverted issue. The ownership and control of the telephone lines and all the telephone appliances here involved was admitted by defendant as we have stated earlier herein and as plaintiff set forth in her brief. There is no question but the trial court was in error when it overruled defendant's objection and motion to strike such evidence.

However, we are not to reverse a judgment unless the error was prejudicial. Defendant urges the prejudicial nature of

such an error is obvious on the ground that by such evidence, to quote from defendant's brief, "* * * Plaintiff intended to cause the jury to believe that if Defendant's wires passed through a tree, the tree would be more susceptible to a lightning strike and that electricity gathered in the tree from such a strike would jump to the telephone line and continue into the Plaintiff's house. By such a chain of inferences, the jury could be misled into believing that Defendant recognized all of this and attempted to repair the negligent condition by changing the location of the telephone line."

When voicing his motion to strike this evidence able counsel for defendant gave as the reason: "* * * because it's not competent for any purpose in this case." In other words, his theory was that stated in Gignoux, supra, that such evidence dealt with matters that were irrelevant and collateral to those involved in trial of this case. The decision on this issue therefore depends upon whether or not admission of this admittedly irrelevant and collateral evidence was prejudicial error. We cannot hold that it was. The reason urged by defendant calls for us to engage in pure speculation as to the inferences the jury might or might not draw from such evidence. This we should not do. Moreover, regardless of whether the jury would have drawn the inferences suggested by the defendant or if they would not have done so, the fact remains plaintiff did not rely upon any such theory. She relied instead upon the testimony of the witness Lutes to the effect lightning struck the joint use pole. It follows that even if the jury were to draw the inferences defendant urges they drew such evidence would at best only be cumulative as to how lightning got into defendant's telephone wires. In view of this fact and the plaintiff's reliance upon an entirely different method whereby lightning got into the defendant's telephone wires, we cannot hold the admission of this evidence was such prejudicial error as to require reversal of this judgment.

The judgment is affirmed.

PER CURIAM:

The foregoing opinion by BRADY, C., is adopted as the opinion of this court. The judgment is affirmed.

ANDERSON, P. J., RUDDY, J., and JACK A. POWELL, Special Judge, concur.