James A. HALL, Plaintiff–Respondent,

v.

**BLACK RIVER ELECTRIC COOPERATIVE, Defendant–Appellant,**

and

**Harold T. Crocker, Defendant.**

No. 18525.

Missouri Court of Appeals, Southern District, Division Two.

Jan. 6, 1994.

Michael D. Murphy, Maurice B. Graham, Schnapp, Graham, Reid & Fulton, Fredericktown, for defendant-appellant.

Frank G. Mack, Ironton, for plaintiff-respondent.

FLANIGAN, Presiding Judge.

Plaintiff James A. Hall filed this action in the small claims division of the Circuit Court of Iron County against defendants Black River Electric Cooperative ("Black River") and Harold T. Crocker. The petition sought damages in the sum of $1,276.42, based on an event which occurred in June 1991. The petition described the event as follows:

Black River Electric's high voltage line welded to the regular line, allowing high voltage to enter my house, burning up my new satellite receiver. Black River says Mr. Crocker hit their pole, causing the accident. Mr. Crocker denies it. I beg the court to find the guilty party and award said judgment to the one liable for this.

Black River filed a general denial. The judgment in the small claims division was in favor of plaintiff.

Black River applied for trial de novo pursuant to § 482.365.[1] The trial de novo was held in the Circuit Court of Iron County, sitting without a jury, and all parties appeared. No additional or amended pleadings were filed. At the conclusion of plaintiff's evidence, the court sustained defendant Crocker's motion for directed verdict. At the conclusion of all the evidence, the court entered judgment in favor of plaintiff and against Black River in the sum of $1,276.42. Black River appeals.

Black River contends that the evidence is insufficient to support the judgment against Black River in that there was no showing of negligence on the part of Black River which caused plaintiff's damage.

Appellate review of this court-tried case is governed by Rule 73.01(c), V.A.M.R. This court must give due regard to the opportunity of the trial court to have judged the credibility of the witnesses. The judgment of the trial court will be sustained unless there is no substantial evidence to support it, or it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 [1] (Mo. banc 1976).

At the trial de novo, no party made a request, pursuant to Rule 73.01(a)(3), for findings of fact or a statement of the grounds for its decision, and the trial court made no such findings or statement. That being so, "all fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached." Rule 73.01(a)(3).

In addition to his own testimony, plaintiff presented the testimony of Jack Golightly, Ralph Gifford, and Harold Crocker. In this court, plaintiff, as respondent, adopts the statement of facts contained in Black River's brief as appellant.

The petition alleged that the occurrence in question took place on June 7, 1991. Some of the evidence was to the effect that it took place on June 5 or June 6. Neither side attaches any significance to the discrepancy concerning the dates, since all of the material events occurred on the same day.

Hall lives in a house at Snow Hollow Lake and receives his electric service from Black River. He owns a television set which uses a satellite receiver. On June 7, 1991, around 3:45 p.m., Hall was going to turn the television set on in his home. There was a loud flash and a loud noise. The television was not on at that time. When Hall "turned the satellite on, there was nothing there." He called Black River and was informed there was a problem down by Highway N on one of their lines.

Hall went to the area where the outage occurred. A high voltage line owned by Arkansas Power & Light, a non-party, had come into contact with a lower voltage line owned by Black River which was attached to a pole owned by Black River. Black River's pole was about a mile from Hall's house. The pole was located on land owned by defendant Crocker.

Hall testified that Black River's pole "was leaning a little bit." Hall testified that Golightly, the general manager of Black River, told him there was a power surge and "that's what burned up my satellite receiver." Hall testified that he had no idea what caused a power surge. "All I know is, it happened, and I sustained damage on my brand new satellite receiver."

Jack Golightly, manager of Black River's power use department, is an electrical engineer. He testified that the Arkansas Power & Light high voltage wire was not on the Black River pole but in proximity to it. He said that Black River's pole and wires complied with the National Electrical Safety Code and with the "more rigid" REA specifi-

---

1. All references to statutes are to RSMo 1986, V.A.M.S., and all references to rules are to Missouri Rules of Court, V.A.M.R.
   Section 482.365.2 reads, in pertinent part:
   Any party aggrieved by any final judgment rendered by a small claims court in a small claims proceeding, except a judgment by consent, may have a trial de novo.... The trial de novo shall be governed by the practice in trials before circuit judges....

cations. He said that the Black River system was equipped with the best known devices in general use for protection against power surges.

In Golightly's opinion, the most likely cause of the surge was that the Black River pole had been struck by a large log skidder which caused the Black River line to swing up and come into contact with the high voltage line of Arkansas Power & Light running above it. He said that the area around the Black River pole, located on Crocker's land, had been recently cleared of brush and debris. "There were tracks of a large vehicle right against the pole [and] there were marks on the pole where it had been hit."

It was Golightly's conclusion that the fact that the Black River pole had been tilted two inches caused the Black River wire to come into contact with the Arkansas Power & Light wire. He said, "Something has to happen to move that pole. It is buried six feet in the ground. There was a number of tracks of large equipment close to the pole. There was indication that brush and trees had been cut around the pole, and there were some cut marks on the pole." He said, "There had to be a jar somewhere to move the pole." He said that the damage to Hall's receiver was consistent with a power surge caused by the contact between the two wires.

Ralph Gifford, employed by Black River as staking party chief in the engineering department, testified that he was contacted by radio about 4:15 p.m. and went to the location of the Black River pole. He said there was a "two-inch gap" on the west side of the pole which caused the wires to come together. He said there were tire marks on the pole and that brush had been pushed to the edge of the woods, away from the right-of-way, and a lot of dirt work done in that area. The black rubber marks on the pole and the two-inch gap indicated that the pole had been recently moved.

Gifford said, "The skid equipment was there, and when we went to the pole there was approximately a two-inch gap which would have been between the highway and the pole. I mean, it would have been in that direction, which would have been on the west side of the pole, and there was tire marks on the pole, and other markings. And that was what we determined, then, was—caused the problem."

Crocker testified that on the day of the occurrence he had been using a large log skidder to clear brush and small trees from around the Black River pole. He said that he had run the skidder two or three hours that day. He also said, "I can't deny that at some point during the day I was working within a few feet or maybe inches of the Black River pole. I was very careful and I didn't believe I hit the pole."

In *Robinson v. Southwestern Bell Telephone Company,* 434 S.W.2d 249 (Mo.App. 1968), the court said, at 254:

> To make out a case for the application of the doctrine of res ipsa loquitur, *the facts relied on must be such as to reasonably exclude any other hypothesis than that of the negligence claimed.* * * * While it is not necessary that they exclude every possible hypothesis except that of the defendant's negligence, it is entirely clear that, if two or more inferences can be equally well drawn from them, one of which points to negligence on the part of the defendant as the cause of plaintiff's injury, and the others to causes for which the defendant was in no way responsible, proof of such facts does not make out a prima facie case for plaintiff. * * * ... In short, the evidence relied upon by plaintiff to make a submissible res ipsa case must also reasonably exclude any other hypothesis of negligence. (Emphasis in original.)

"Where the evidence affords no more than equal support for two or more inconsistent and contradictory inferences as to the ultimate and determinative fact, liability is left in the field of conjecture and there is a failure of proof." *Lindsay v. Wille,* 348 S.W.2d 1, 6 (Mo.1961).

A plaintiff "must show that it was more probable than not that the defendant was the source of the negligence. When the plaintiff simply shows it was at least equally probable that the negligence was due to another, the plaintiff has not made a submissible case." *Marshall Interiors v. Young Men's Ass'n,* 787 S.W.2d 329, 332 (Mo.App.1990). To the

same effect see *Mahan v. Missouri Pacific R. Co.,* 760 S.W.2d 510, 513 (Mo.App.1988); *Neis v. National Super Markets, Inc.,* 631 S.W.2d 690, 691 (Mo.App.1982).

The testimony of Jack Golightly and Ralph Gifford was to the effect that Black River's pole had been struck by the large log skidder which caused the Black River wire to swing up and come into contact with the high voltage wire of Arkansas Power & Light. That, in turn, caused the power surge and the loss to Hall's satellite receiver. That testimony, coupled with the admission of Crocker that he had run the skidder two or three hours that day within inches of the Black River Pole, was sufficient to permit a finding that the cause of plaintiff's damage was Crocker's operation of the log skidder. At least, the evidence supports the inference which points to negligence on the part of Crocker as the cause of plaintiff's injury. Plaintiff makes no claim that Black River was in any way responsible for Crocker's operation of the log skidder.

As stated in *Marshall Interiors, supra,* when, as here, the plaintiff simply shows it was at least equally probable that the negligence was due to another, plaintiff has not made a submissible case.

The parties to this appeal disagree on whether plaintiff was entitled to the benefit of the doctrine of res ipsa loquitur. Black River argues that plaintiff was not entitled to the doctrine because there was no showing "that the instrumentality in question" was under the exclusive control of Black River. Plaintiff argues that the doctrine of res ipsa loquitur did apply and that there was "abundant evidence" showing that the instrumentality in question was under the exclusive control of Black River.

It is unnecessary to resolve that dispute. Assuming, but not deciding, that plaintiff was entitled to the doctrine of res ipsa loquitur, where, as here, plaintiff's evidence permits the inference that negligence on the part of Crocker caused plaintiff's injury and there is no claim that Black River was responsible for Crocker's negligence, plaintiff failed to make a submissible case against Black River. *Marshall Interiors v. Young Men's Ass'n, supra; Mahan v. Missouri Pacific R. Co.,*

*supra; Robinson v. Southwestern Bell Telephone Company, supra.*

Plaintiff did not appeal from that portion of the judgment which exonerated Crocker. The evidence is insufficient to support the judgment against Black River.

That portion of the judgment which found in favor of plaintiff and against defendant Black River and awarded plaintiff the sum of $1,276.42 is reversed. In all other respects, the judgment is affirmed.

PREWITT and CROW, JJ., concur.