Gene TOSTON, Respondent,

v.

Harry McCRACKEN and Junior Gillespie, a partnership d/b/a Harley-Davidson Sales & Service, Appellants.

No. KCD 28089.

Missouri Court of Appeals, Kansas City District.

Aug. 8, 1977.

J. Turner Jones, Hiram G. Watson, Jones & Watson, Columbia, of counsel, for appellants.

Scott O. Wright, Brown, Wright, Willbrand & Simon, Columbia, for respondent.

Before SWOFFORD, P. J., PRITCHARD, C. J., and DIXON, J.

SWOFFORD, Presiding Judge.

This is an appeal from a money judgment entered on a jury verdict for $2,945.00 in favor of respondent (plaintiff) and against the appellants (defendants). The judgment was for the value of a Harley-Davidson motorcycle which the plaintiff, as bailor, had left with the defendants, as bailees, for check-up and service at their place of business in Columbia, Missouri. The vehicle was stolen from the business establishment of the defendant and never recovered nor the thief or thieves apprehended. After an unavailing motion for a new trial, defendants appeal.

They raise two points or assignments of error upon which they seek reversal of the judgment: *First*, that the trial court erred in failing to sustain defendants' motion for a directed verdict at the close of all the evidence because (A) the evidence showed *as a matter of law* that the motorcycle was stolen from their place of business and that they exercised ordinary care to safeguard the motorcycle from being stolen; and (B) the evidence showed *as a matter of law* that any negligence of the defendants was not the proximate cause of the theft of plaintiff's motorcycle. *Second*, that the court erred in giving Plaintiff's Instruction No. 3 because *no submissible evidence* was presented from which a jury could find that the leaving of the key in the ignition of the motorcycle constituted negligence.

Since both of these points call into question the sufficiency of the evidence, it is necessary to summarize the evidence supportive of the judgment.

The defendants are partners and operate a Harley-Davidson motorcycle dealership.

The plaintiff was the owner of a 1200 cc Harley-Davidson motorcycle valued at $2,949.00–$2,960.00. On April 30, 1974, the plaintiff took this machine to the defendants' place of business for a 1000 mile check-up and service. The defendants agreed to perform the work and asked that the machine be left with them for that purpose. The machine was equipped with a self-starter which was activated by an ignition key. At the defendants' request, the plaintiff left this key with the machine.

The next day when the plaintiff returned to get his machine, he was told that it had been stolen. The motorcycle was never recovered and the plaintiff was not paid for its loss.

The defendants rent the first floor of a concrete block building. The basement thereof is leased to another tenant. The space occupied by the defendants consists of one large room with a small office and rest room partitioned off in a back corner. On the front of these quarters there are two large overhead doors and a walk-in door. It has several steel casement multi-pane windows along each side and at the back which are not barred or otherwise protected. The ground on which this building sits slopes toward the rear and access is gained to the basement area by means of two large doors which slide sideways on tracks. It is apparent from the photographs in evidence that by walking on a retaining wall at the back of the building and across the tracks upon which the basement doors slide easy access is attainable to the windows in the rear wall of defendants' premises.

At closing time the evening that plaintiff brought his machine in for service, the defendant Gillespie either locked all doors and windows on the premises or checked to see that they were locked. The next morning it was discovered that the glass of one of the windows at the back had been broken, the window was unlocked, and plaintiff's machine had been stolen. At the time the shop was closed the preceding evening some work had been done on the plaintiff's motorcycle. Some of its parts were placed on a rag beside the machine. All of these parts, except the seat and a gasket, were missing the morning the theft was discovered. The timing plug had been removed. When this plug is out and the motorcycle is started, it sprays oil. Such an oil spray was discovered in the vicinity of one of the overhead doors at the front of the shop, which door was also unlocked and open the morning the theft was discovered.

The case was submitted to the jury on the theory of bailees' (defendants') failure to exercise ordinary care to safeguard the property of the bailor (plaintiff) in that the bailees negligently left the key in the ignition of the motorcycle the night it was stolen.

The evidence supported a finding that when a machine was received by the defendants for service it was required that the ignition key be left and the plaintiff either left the key in his machine or handed it to one of the defendants; that the key was necessary to start plaintiff's motorcycle; and, that the keys were left in customers' machines that were being serviced when they were inside the building at night. There was no dispute that the ignition key facilitates the starting of a motorcycle and its movement and makes it easier to steal.

There were 20 or 30 new motorcycles which the defendants had for sale in the shop the night of the theft and the ignition keys were removed from them and placed in the office or on a key board in the vicinity of the office. None of these machines had been tampered with or stolen. Two other customers' machines in the shop for service had been moved or tampered with. The plaintiff's machine was the only one stolen.

Defendant McCracken does not remember specifically if the ignition key was in the plaintiff's machine when he closed up the shop on the evening before the theft was discovered but according to the custom and practice of the business it would be left there and the key to plaintiff's machine was never located following the theft.

The defendants had leased the premises here involved since 1969 and during that

period the place had been broken into three or four times. As a result, the defendants had installed a wire screen on the front walk-in door and removed any cash on the premises at night. Both of the defendants were thus aware that the building was not secure.

■ This case must be ruled with certain general principles in mind concerning the law of bailments. A bailment for the mutual benefit of both bailor and bailee (as in the case at bar) requires the bailee, although not an insurer, to exercise ordinary care in the handling and safekeeping of the property bailed. While the underlying relationship of the bailor and bailee is contractual, the bailees' liability (on this record) must be predicated upon negligence or tort principles. 8 Am.Jur.2d, Bailments, Sections 206–207; *McKnight v. Batrick*, 49 S.W.2d 277, 280 [1–4] (Mo.App.1932); *Nuell v. Forty-North Corporation*, 358 S.W.2d 70, 75 [3–5] (Mo.App.1962); *Crow Contracting Corp. v. George F. Smith Co.*, 407 S.W.2d 593, 597 [2, 4] (Mo.App.1966). More precisely the plaintiff's cause of action is predicated upon the proposition as stated in 61A C.J.S. Motor Vehicles § 726, p. 649, "A garage keeper is liable for the loss by theft of a motor vehicle stored in his garage where he failed to use ordinary care to prevent the theft * * *." The fact that the plaintiff's machine was stolen from the defendants' premises is not, as here claimed, a defense to the action *as a matter of law*. As was stated in *Nuell v. Forty-North Corporation*, supra, at l.c. 75 [4]:

"* * * However, a bailee for the mutual benefit of both parties is not an insurer, and he may exculpate his failure to return the property to the bailor by showing that its loss or damage was not due to his failure to exercise ordinary diligence, but was due to an inevitable accident, commonly called an act of God, or to an overpowering and irresistible force, as a hostile army. Story on Bailments, Sec. 25, p. 25. *Robbery by force is classed by that authority as an irresistible force, but mere theft is not.* Story, Sec. 27, p. 27. And see *McEvers v. The San-*

*gamon*, 22 Mo. 187; *Halyard v. Dechelman*, 29 Mo. 459; *Clark v. Shrimski*, 77 Mo.App. 166." (Emphasis supplied)

■ Whether the loss by theft of a vehicle while in the care of a bailee-garageman is due to the bailee's failure to exercise ordinary care and whether such negligence was the proximate cause of the loss is generally for the determination of the trier of the facts under the circumstances of a particular case. *McKnight v. Batrick*, supra, at l.c. 280 [5, 7].

Stating the issue presented here even more precisely, can this negligence action be successfully maintained against the bailees-garagemen who left the keys to plaintiff's motorcycle in the ignition inside an unattended, but locked, building over night, which vehicle was stolen by someone breaking into the building, under the facts and circumstances as shown by the evidence?

No Missouri decisions dealing directly with this problem are cited in the briefs nor have been found by independent research. Authorities from other jurisdictions dealing with this general subject of negligence of bailee and proximate causation are split and diametrically at odds. Of course, each case must be judged by the particular facts and circumstances of that case and many of the authorities denying recovery are clearly distinguishable on their facts. The persuasive authorities, nearer to the facts in this record and more in line with the general Missouri law on bailments are to be found in *Loving v. Howard Lare, Inc.*, 344 Mich. 97, 73 N.W.2d 290 (1955); *Fortner v. Carnes*, 258 S.C. 455, 189 S.E.2d 24 (1972); *Leatherman v. Miller's Mutual Fire Ins. Co. of Texas*, 297 So.2d 540 (La.App.1974); *Edmondson v. Harris*, 256 Ark. 763, 510 S.W.2d 290 (1974).

■ In this case, the matter of the bailees' failure to exercise ordinary care to safeguard the bailor's property and the matter of proximate causation was properly for the determination of the jury.

■ The jury could reasonably find that the premises of the bailees was subject

to easy illegal entry; that the bailees left the ignition key in the plaintiff's machine and left it unattended; that the ignition key was necessary to start the machine; that it was in fact started in the vicinity of one of the front doors and removed from the premises; that the bailees applied a different standard of care to the safeguarding of their own machines than to those of their customers; and that as a result, they failed to use that degree of care imposed upon them by law and were negligent. Further, the jury could reasonably find from the evidence that as a direct and proximate result of this negligence the plaintiff's motorcycle was stolen and lost to him to his damage.[1] The appellants' Points IA and IB are ruled against them.

Having reached this conclusion, it necessarily follows that since the case was properly submitted to the jury, the appellants' Point II must likewise be ruled against them. The basis of their attack upon respondent's Instruction No. 3 rests upon the same reasons and arguments advanced as to the sufficiency of the evidence.

The judgment is affirmed.

All concur.

---

1. As was said in *Fortner v. Carnes*, supra, 189 S.E.2d at l.c. 28: "* * * In a bailment case the theft itself constitutes injury or loss to the bailor and there is no act of a third party intervening between any negligence of the bailee and the injury or loss."