**CENTENNIAL INSURANCE COMPANY, Respondent,**

v.

**INTERNATIONAL MOTOR CAR CO., Appellant.**

**No. 39806.**

Missouri Court of Appeals, Eastern District, Division Three.

April 17, 1979.

Donald J. Weyerich, Brainerd W. LaTourette, Jr., LaTourette & Weyerich, Clayton, for appellant.

Donald Gunn, Jr., St. Louis, Robert A. Wulff, Amelung, Wulff & Willenbrock, St. Louis, for respondent.

REINHARD, Presiding Judge.

Appellant International Motor Car Company appeals from a judgment of the circuit court of St. Louis County finding it liable to respondent Centennial Insurance Company as subrogee to the rights of Thomas Tenholder and Tenholder Travel, Incorporated. The case involved the bailment of an automobile which was apparently stolen from appellant's car lot.

On or about April 21, 1975, Thomas Schulze, a salesman for International Motor Car Company, a Mercedes and Mazda dealership, agreed to allow Thomas Tenholder to drive for "a couple of days" a demonstrator Mercedes, which Tenholder was considering leasing. As part of this arrangement, Schulze took possession of Tenholder's 1975 Lincoln Continental, which was titled in the name of Tenholder Travel, Inc. and drove it back to appellant's car lot at the corner of Manchester and Lindbergh in St. Louis County.

While in appellant's possession, and pursuant to the discussions between Schulze and Tenholder, appellant sought bids on the Lincoln Continental so that Tenholder might use proceeds from a sale of that automobile toward any lease or purchase of a Mercedes from appellant. In receiving bids on the Lincoln Continental, appellant allowed the car off its lot only once, when Schulze and appellant's used-car manager drove the car to a nearby dealer for appraisal.

For reasons not relevant to this appeal but arising primarily from Tenholder's conduct, the Lincoln remained on the lot of appellant until the evening of April 28, 1975. During this period, Schulze was primarily responsible for the security of this car. According to Schulze's testimony, on the evening of April 28, 1975, the Lincoln was parked in a row of cars comprising primarily new cars which had been sold and were waiting to be picked up. The car was parked approximately 15 feet from the used car office and was clearly visible through the window of that office. Aside from the normal illumination of the lot (there were "no dark areas of the lot"), a floodlight on the used car office illuminated the Lincoln.

Schulze further testified that at approximately 9:30 the night of the 28th, he followed his usual procedure of locking the keys to the Lincoln inside a metal lock box inside the office. He then made certain that the rear door to the office was locked and left by way of the front door. Schulze then checked the driver's door of the two-doored Lincoln and found it locked. Although he could not remember whether he tested the passenger door, Schulze testified that the Lincoln was equipped with power locks, so that when one door is locked, the other automatically locks. Schulze then left for the evening. There were no gates, chains or fences across the driveway of appellant's lot.

When Schulze returned the following morning the Lincoln was missing, although the keys to the car were still in the metal lock box in the used car office. After checks were made to determine whether someone properly had the car, it became apparent that the car had been stolen.

Pursuant to the comprehensive clause of an insurance policy which respondent Centennial Insurance Company had issued to Tenholder Travel, Inc., the latter made a claim for the value of the stolen automobile. Contending that Tenholder Travel had assigned title to the car prior to the theft, respondent refused to pay and then filed in the circuit court a two count petition naming Thomas Tenholder, Tenholder Travel, Inc. and International Motor Car Co. as defendants. The petition was subsequently amended, and separate hearings were held as to each count.

In Count I of its second amended petition, respondent requested the court's determination of the legal ownership of the 1975 Lincoln Continental at the time of its disappearance and consequently of the liability of respondent to Tenholder Travel, Inc. under the above-mentioned policy. After the separate hearing on Count I, the trial court entered judgment in favor of Tenholder Travel, Inc. and against respondent in the amount of $10,800 and costs.

In the Third Amended Count II of its petition, respondent essentially alleged that appellant was bailee of the Lincoln, that Tenholder Travel, Inc. had requested return of the automobile and appellant had failed to return it, and that appellant's failure to return the vehicle was due to its negligence and carelessness. Respondent further alleged that because of appellant's conduct, respondent had had to pay $10,800 to Tenholder Travel under the terms of the insur-

ance policy, thereby becoming subrogated to all rights of recovery that Tenholder and Tenholder Travel might have against appellant. After a hearing on this count, at which the only testimony was that of Schulze testifying for appellant,[1] the court rendered a judgment in favor of respondent against appellant in the amount of $10,800 and costs. The trial court issued no findings of fact or conclusions of law.

In its sole point on appeal, the appellant asserts that the trial court erred in finding for respondent, because the evidence adduced showed that appellant had satisfied the standard of care imposed on a bailee in a bailment for the mutual benefit of bailor and bailee.[2]

■ Our review of this court-tried case is governed by the oft-quoted guidelines enumerated in *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). In this connection we emphasize the rule that the appellate court should set aside a decree as against the weight of the evidence only with a firm belief that the decree is wrong. *Murphy v. Carron,* 536 S.W.2d at 32; *Cook v. Lodes,* 560 S.W.2d 64, 65 (Mo.App.1977).

In its third amended Count II, respondent alleged that appellant's failure to return the bailed automobile was due to defendant's negligence or carelessness. In so doing, respondent did not base its cause of action on simple breach of a bailment contract. By alleging general negligence on bailee's part, respondent, upon proof of loss, raised an inference of negligence under the res ipsa loquitur doctrine, thereby shifting to the bailee the burden of going forward with evidence of due care. However, the burden of proof as to the bailee's negligence remained on the respondent throughout. *Broadview Leasing Co. v. Cape Central Airways, Inc.,* 539 S.W.2d 553, 560 (Mo.App. 1976).

In response to respondent's prima facie case of negligence under the res ipsa doctrine, appellant offered the testimony of Schulze tending to show that the appellant had exercised due care as to the bailed automobile, which nevertheless apparently was stolen from appellant's lot. Appellant cites *Toston v. McCracken,* 555 S.W.2d 48, 51 (Mo.App.1977) for the principle that a bailment for the mutual benefit of bailor and bailee imposes on the bailee not the responsibility of an insurer but the duty to exercise ordinary care in the handling and safekeeping of the bailed property. Appellant alleges that the uncontradicted testimony of Schulze proved that it met its duty of ordinary care toward the stolen Lincoln Continental and required a verdict in its favor.

■ Whatever our position as to whether the conduct of Schulze, as testified to by him, met the standard of ordinary care toward the bailed automobile, other considerations control our decision. We first reiterate that the reviewing court is to give due deference to the trial court's opportunity to have judged the credibility of the witnesses. *Cook v. Lodes,* 560 S.W.2d at 65. Secondly, that Schulze's testimony as to due care went unchallenged does not compel a finding in appellant's favor. Responding to a similar contention, the court in *Intertherm, Inc. v. Coronet Imperial Corp.,* 558 S.W.2d 344, 348 (Mo.App.1977) held that because trial court in a court-tried case is the arbiter of facts, it may believe or disbelieve oral evidence, and the fact that the testimony is uncontradicted "is not in any way decisive." Thirdly, we note that a prima facie showing of negligence under the res ipsa doctrine raises a substantial factual inference of negligence that would not disappear upon the submission of appellant's uncontradicted or unimpeached rebuttal evidence, but would remain in the case

---

1. However, the parties stipulated that the court, in ruling on Count II, was to consider the evidence presented at the hearing on Count I.

2. In its brief, respondent urges that we should dismiss the appeal because appellant failed to properly raise this issue in its motion for a new trial. Without deciding whether the motion for

a new trial included this issue, we note that, because a motion for a new trial is not required in a court-tried case, appellant's position on appeal should not be undermined by the filing of one inartfully drawn. *Coale v. Rickard,* 540 S.W.2d 151, 152 (Mo.App.1976).

as evidence sufficient to support an affirmative finding for respondent. *Golian v. Stanley,* 334 S.W.2d 88, 93–94 (Mo.1960); *Robinson v. Southwestern Bell Telephone Company,* 434 S.W.2d 249, 255 (Mo.App. 1968). The trial court had a right to disbelieve and reject appellant's evidence and find for respondent on the inference of negligence arising under the facts. *Robinson v. Southwestern Bell Telephone Company,* 434 S.W.2d at 255. The record does not support the contention that the trial court imposed an undue standard of care on appellant as bailee.

Affirmed.

WEIER, C. J., and CRIST, J., concur.