Trudy ROYSTER, Respondent,

v.

Vernon PITTMAN, d/b/a Vernon Pittman Van Lines, Appellant.

No. WD 35946.

Missouri Court of Appeals, Western District.

March 26, 1985.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied April 30, 1985.

Application to Transfer Denied June 25, 1985.

Alan E. South, Crews, Smart, South, Whitehead, Reaves & Waits, P.C., Kansas City, for appellant.

Paul O. Liebengood, J. Thomas O'Connor, Blue Springs, for respondent.

Before LOWENSTEIN, P.J., and NUGENT and BERREY, JJ.

LOWENSTEIN, Judge.

This is a cause of action in negligent bailment, tried to a jury, for damage to antique furniture and china which occurred during approximately a two year period while in the possession of the defendant moving company.

Facts favorable to the verdict show that on May 31, 1977 appellant Vernon Pittman Van Lines (Pittman) was hired by respondent, Trudy Royster, to temporarily store and then move her furniture and some china to California. However, the storage became permanent after 180 days and Pittman issued a warehouse receipt. It wasn't until September 9, 1979 that Royster decided to remove a few items. Pittman was never required to transport the goods as originally contemplated. At that time Royster discovered a number of pieces of furniture were damaged. The furniture and cartons were stored in a state of disarray. In October, 1979, Royster had her goods transferred to a different warehouse, but it wasn't until October, 1981 that an appraiser viewed the damaged items in order to make an estimate of their reduction in value. Royster testified none of the damage could have occurred at a time after the furniture left Pittman's custody. In February, 1984 a jury returned a verdict of $10,500.00 for actual damages against Pittman from which it appeals.

Royster's petition included two counts. One was based on false representation to Royster by Pittman that the warehouse was "climatized," *i.e.* free from temperature and humidity changes. This count was dismissed, as was an attending request for punitive damages. The second count was based on Pittman's general negligence in moving, packing and storing Royster's property. This was submitted to the jury, although punitive damages were not allowed on this count either.

The court's rulings, not appealed, effectively kept the question of damage due to lack of "climatized" storage from the jury. The only damage as pertinent to this appeal concern breakage and gouges to the furniture as opposed to water damage and warping. Inventory notations were introduced showing any damage of the items when taken by Pittman. Royster's expert testified at length about antique items having parts missing, and various mars or scratches with a resultant diminution of value in 1979.

Pittman's first point contends that the trial court should have granted a directed verdict because Royster failed to prove *specific* acts of negligence. Pittman relies on *Gutknecht v. Wagner Brothers Moving & Storage Co.*, 266 S.W.2d 19, 23 (Mo.App. 1954), for the proposition that in a warehouseman case there is only one kind of negligence action. In *Gutknecht*, however, the plaintiff sued in three counts: specific negligence, general negligence and breach of bailment contract. The court found no evidence to support specific negligence, nor general negligence because in that case a fire in a warehouse did not give rise to the *res ipsa loquitur* doctrine. However, the court did find a cause of action on the contract.

Pittman fails to recognize that all warehousemen are bailees (even if all bailees are not warehousemen as defined in § 400.7–102(1)(h) RSMo 1978). In the present case, as in any bailment action, any of the three theories may be asserted. *Ryan v. Park-Rite Corporation*, 573 S.W.2d 450, 452 (Mo.App.1978). It is true Royster did not plead or prove specific negligence, but that was not her only option. The plaintiff having established a bailment

relationship, and the failure of the defendant to return the property undamaged could recover either in breach of bailment contract or tort. *Smith v. Morgan Drive Away, Inc.,* 613 S.W.2d 469, 471 (Mo.App. 1981). Unlike when fire destroys property (*see Gutknecht, supra*) or when a burglar steals property (*see Barad v. Leppert Roos Fur Company,* 442 S.W.2d 104 (Mo.App. 1969)) when property comes out of a warehouse broken, scratched or with parts completely missing, the facts give rise to an action, as was tried here for general negligence committed by the bailee. Upon the bailor's proof of loss, an inference of negligence is raised under the *res ipsa loquitur* doctrine, and thereby shifts the burden of going forward with evidence of due care onto the bailee. *Centennial Ins. Co. v. International Motor Car,* 581 S.W.2d 883, 885 (Mo.App.1979). *See* 30 Mo.L.Rev. 300, 310 (1965). The only count submitted to the jury was based on general negligence in a bailment situation. On this submission the verdict was returned. The jury did not consider specific negligence or breach of a bailment contract.

Pittman would like this court to believe all the damage to Royster's antique furniture was caused by natural occurrences and relies on *Consumers Cooperative Assoc. v. McMahan,* 393 S.W.2d 552, 555 (Mo. 1965), where the supreme court held that unless a warehousemen has been guilty of "specific negligence contributing to the loss or injury, he is not liable for damages . . . where the goods are of such a nature that they would tend to deteriorate from natural causes." In *McMahan* some baling wire rusted while in storage in an underground cave. Clearly *rust* is a natural occurrence, as is cracked varnish from lack of humidity control. But no natural occurrence explains here why the top was missing from a table valued at $2600.00.

As bailee, Pittman had the burden of proving due care on his part. He produced no evidence explaining the numerous scratches and gouges on the furniture, let alone the broken and missing pieces. As bailee, Pittman did not sustain the burden of showing due care, *Broadview Leasing Co. v. Cape Central Airways, Inc.,* 539 S.W.2d 553, 560 (Mo.App.1976). *Centennial Ins., supra,* at 883; *Ryan, supra,* at 452. Pittman's further contention of Royster's error in not pleading § 400.7–204 RSMo is denied. This statute sets the duty of care for a warehouseman to use the care a "reasonably careful man would exercise under like circumstances," and, "he is not liable for damages which could not have been avoided by the exercise of such care." The standard of care defined in the instructions, as taken up in the next point, do not differ from the statute. It is further noted the comments to the Code on warehousemen note the codification does little to change existing Missouri law. Thus, the trial court did not err in overruling Pittman's motion for directed verdict.

Pittman's second point suggests instructional error. Instruction No. 7,[1] the verdict director, was based on multiple acts of negligence and was a modification of MAI 17.02. Pittman says this instruction failed to instruct on the warehouseman's duty and failed to set out the specific acts or omissions of Pittman which constituted a breach of the duty and negligence.

For the submission of an action for general negligence against a warehouseman bailee, MAI 31.02(3), based upon the *res ipsa loquitor* doctrine, would have been appropriate in this case. This instruction requires a description of the defendant's control or management, that the oc-

---

1. Your verdict must be for the plaintiff if you believe:

First, defendant moved, packed and stored plaintiff's property in a manner so as to permit it to become damaged or lost, and

Second, defendant was thereby negligent, and

Third, as a direct result of such negligence, plaintiff sustained damaged.

The term "negligent" or "negligence" as used in this instruction means the failure to use ordinary care. The phrase "ordinary care" means that degree of care that an ordinarily careful and prudent person would use under the same or similar circumstances.

currence that was not likely to happen when those in charge use due care, and the occurrence directly resulted from the defendant's negligence which caused damage to the plaintiff.

■ Rule 72.02(b) mandates use of the appropriate instructions applicable to a particular case, and violation of which constitutes error, the prejudicial effect to be determined. Rule 72.02(c). Such deviation is presumed prejudicial.

■ It is determined the effect of using a negligence instruction when one on *res ipsa* was appropriate, did not result in prejudicial error. Under a theory of general negligence of bailment, the instruction given did contain the elements and findings necessary for such a submission. The standard of care and definition of negligence used in these instructions (MAI 11.-07) was in harmony with the case and statutory law applicable to a warehouseman bailee. Section 400.7–204(1) RSMo 1978. Instruction 7 required the jury to find Pittman moved, packed and stored the goods and permitted damage and was negligent in so doing before it could find for Royster. The same requirements would have been necessary under MAI 31.02(3), the *res ipsa* instruction. The appropriate instruction would have put no greater burden on the plaintiff than the one used, so a prejudicial effect to the defendant cannot be upheld. Had this been a case of specific negligence on the part of the defendant, Pittman would have prevailed on this point. As noted in the first point, there was evidence of damage to the furniture such as broken legs, gouges, etc. that occurred after Pittman took possession, and this type of damage would not result from other than lack of ordinary care.

■ The instruction given was not confusing or misleading. *Affiliated Foods, Inc. v. Strautman*, 656 S.W.2d 753, 758 (Mo.App.1983). It was not perfect, but substantially correct, and no prejudice was shown to the defendant. *Wilson v. Bob Wood & Associates, Inc.*, 633 S.W.2d 738, 751 (Mo.App.1981). The burden of proof on the bailor and standard of care were based on the requirement of general negligence, nor did it give the jury a "roving commission". *Broadview Leasing Co., supra*, at 564. On this record a reversal is not required. *Terry v. Houk*, 639 S.W.2d 897, 901 (Mo.App.1982).

■ Pittman's last contention is that the $10,500.00 verdict was excessive and not supported by any substantial evidence and as such the trial court erred in not granting Pittman a directed verdict or new trial. When reviewing the verdict, this court may only consider evidence which supports, rather than disaffirms it. *Brotherton v. Burlington Northern R.R.*, 672 S.W.2d 133, 138 (Mo.App.1984). Pittman argues that because an appraisal in 1977 valued the property at $9,676.75, the later appraisal and court testimony by Royster's expert placing the property's original value at $23,603.00 is inherently unbelievable. In May, 1977, Royster had all the items appraised by a Mr. Cordier. The sum he put on the goods was $9,676.75. Mr. Cordier later died. In October, 1981, Royster's expert at trial examined the items for the first time. She put a present value on the furniture and at trial was asked, without objection as to value in 1977 based upon Royster's explanation of their condition in 1977. The expert gave an estimate value as of 1977 of $23,603.00 and a value in 1979 after the damage of $10,330.00. However, the jury obviously gave the expert's opinion some credibility, and this court cannot say as a matter of law that the verdict is so "glaringly unwarranted so as to shock this court's conscience." *Fravel v. Burlington Northern R.R.*, 671 S.W.2d 339, 344 (Mo. App.1984).

Pittman also argues that Royster's testimony concerning value of some china, silverware, and a photo album should be rejected as not constituting substantial evidence. As owner of the property, Royster was competent to testify as to the good's value, and the jury determined the weight to give such testimony. *Barber v. M.F.A. Milling Co.*, 536 S.W.2d 208, 211 (Mo.App. 1976). The jury did not blindly award Roy-

ster all that she was asking, having given only $10,500.00 out of $23,273.00. She had asked for $13,273.00 for damage to the furniture and another $10,000.00 for damage to china and other belongings. This court will defer to the trial court's discretion in letting the verdict stand. *Fowler v. Park Corp.*, 673 S.W.2d 749, 758 (Mo. banc 1984). There was evidence in this record to support a verdict for damages of $10,-500.00.

The judgment is affirmed.

All concur.