Ronald E. ADAMSON and Sheryl Adamson, Plaintiffs–Appellants,

v.

INNOVATIVE REAL ESTATE, INC., and Robert F. Arnold, Individually, and d/b/a Robert F. Arnold & Associates Land Surveying, Defendants–Respondents.

Nos. SD 29005, SD 29007.

Missouri Court of Appeals,
Southern District,
Division Two.

March 27, 2009.

Motion for Rehearing and Transfer Denied April 17, 2009.

Application for Transfer Denied June 30, 2009.

Jonathan C. Browning, of Mariea & Sigmund, L.L.C., Jefferson City, MO, for Appellants.

Matthew P. Hamner, of Phillips, McElyea, Carpenter & Welch, P.C., Camdenton, MO, for Respondents.

GARY W. LYNCH, Chief Judge.

Ronald Adamson and Sheryl Adamson (collectively "Appellants") bring these appeals following the Circuit Court of Camden County, Missouri's entry of two judgments against them;  one a summary

judgment in favor of Innovative Real Estate Inc. ("Innovative"), and the other, a judgment entered after a bench trial in favor of Robert F. Arnold ("Arnold") (collectively "Respondents").[1] Appellants argue that the trial court erred in entering the Innovative judgment because Appellants' cause of action was not barred by either collateral estoppel or the compulsory counterclaim rule, Rule 55.32(a).[2] Appellants also argue that the trial court erred in entering the Arnold judgment because Appellants sufficiently proved that the survey prepared by Arnold did not comply with the Minimum Standards for Property Boundary Surveys and that the trial court abused its discretion in denying their request to amend their pleadings pursuant to Rule 55.33(b).[3] Finding no merit in any of Appellants' points, the trial court's judgments are affirmed.

## Factual and Procedural Background

Appellants own certain real property located in Camden County, on which they operate a "Super Lube," a quick oil-change business ("Adamson property"). This property was originally purchased by and titled in the names of Ronald Adamson and Marilyn Adamson, but in a subsequent dissolution action, Marilyn[4] quit-claimed her interest to Ronald. Innovative is a Missouri corporation and owns the real property located immediately to the east of and adjacent to the Adamson property.

When the Adamson property was purchased in 1998, it was undeveloped land. In preparation for purchasing this property, Ronald retained the services of Arnold to develop a legal description for and perform a survey of the Adamson property ("Arnold survey"). Immediately after acquiring the property, Ronald and Marilyn undertook to improve the same by constructing a building for the operation of the Super Lube business.

## Facts pertaining to Innovative:

Innovative, as grantor, and Ronald and Marilyn, as grantees, were parties to an Amended Driveway Easement ("Easement"), in which Innovative conveyed to Ronald and Marilyn an easement for ingress and egress over an existing driveway on the west side of Innovative's property to provide access to the back portion of the Adamson property.[5] The Easement did not contain a particular legal description of the actual location of the driveway, but rather, simply described the easement as being "along and across a certain existing driveway[.]" The Easement contained a provision that stated if either the grantor or the grantees conveyed any portion of their respective properties the Easement would become null, void, and of no further effect. The Easement utilized the same legal descriptions for the parties' properties as used in their respective recorded

1. These appeals were consolidated by this Court for all purposes.

2. All references to statutes are to RSMo 2000, and all references to rules are to Missouri Court Rules (2005), unless otherwise indicated.

3. "The Minimum Standards for Property Boundary Surveys" are adopted by the Division of Geology and Land Survey, Missouri Department of Natural Resources. As noted in those regulations, the Department of Natural Resources is authorized by section 60.510(7) to prescribe "advisory regulations designed to assist in uniform and professional surveying methods and standards in this state."

4. In order to avoid confusion, we use first names to distinguish between Ronald, Sheryl, and Marilyn Adamson. No disrespect is intended.

5. The Easement is recorded with the Camden County Recorder of Deeds at book 465 page 109.

deeds, which legal descriptions were originally drafted by Arnold and which commenced at the same point described as "an existing pipe[.]"

On November 26, 2001, Ronald [6] filed an action against Innovative in the Camden County Circuit Court ("Case 1"). In his petition, Ronald alleged that, pursuant to the Easement, he had access to the back portion of his property over "the existing drive on [Innovative's] property[.]" Ronald sought an injunction requiring the removal of and damages for Innovative's placement of "a concrete barrier blocking [Ronald's] access over subject easement[.]" In its answer, Innovative alleged that the Easement had been extinguished due to the conveyance of the property by Marilyn to Ronald by quit-claim deed after the dissolution of their marriage. Also, relying upon the legal description of its property in its deed and alleging in paragraph three of its counterclaim against Appellants that it had "erected a series of concrete parking blocks along its westerly property line," Innovative sought damages against Ronald for his trespass upon its property during his removal of the parking blocks. In his answer to Innovative's counterclaim, Ronald admitted "that portion of paragraph 3 as it relates to [Innovative's] ownership and actions." The Camden County Circuit Court heard this action and on January 20, 2004, entered an amended judgment which particularly described the exact location of the driveway and, thus, the easement, found that Marilyn's conveyance by quit-claim deed did not extinguish the Easement, and ordered "that the Permanent Injunction requested by [Ronald] is granted preventing [Innovative] from blocking [Ronald's] use of the easement along the existing driveway as described above[.]" The legal description for the easement in this judgment commenced at the "existing pipe" and described the western boundary of the existing driveway as: "following the easterly line of lands in the title Adamson [sic] as described in Book 491 at Page 220, the same being the westerly line of lands in title to [Innovative] as described in Book 465 at Page 108." This judgment was not appealed.

On September 8, 2003, Innovative filed a separate action against Ronald and Sheryl seeking a judgment declaring that the Easement had been extinguished by Innovative's conveyance of a portion of its property to the State of Missouri ("Case 2"). Innovative pleaded the legal descriptions of its property and the Adamson property as prepared by Arnold and as used in their respective recorded deeds. Appellants admitted the accuracy of these legal descriptions as describing the respective properties owned by the respective

---

**6.** Superlube Incorporated of Camdenton was also a plaintiff in Case 1. Ronald was alleged to be its owner and President. It did not claim, however, to have any ownership interest in the Adamson property, but rather, only claimed to have sustained damage for loss of business due to Innovative's blockade of the driveway. The record related to the summary judgment in this case is not clear as to when Ronald conveyed the Adamson property to himself and his new wife, Sheryl, in relation to the filing of Case 1, and it is, likewise, not clear from that record as to whether Sheryl was a party to Case 1. Ronald alleged in the petition in Case 1 that he owned the property.

On the other hand, neither party in the case at bar makes any argument contending that Sheryl was not a party in Case 1 and that her absence as a party in that action, even though she was an owner of the property at that time, has any impact upon the issues in this case. Thus, in the absence of any contention by any party otherwise, we proceed based upon the premise that either Sheryl was not an owner of the property at the time Case 1 was pending, consistent with Ronald's pleading in that case, or that, if so, she was properly considered to be a party in that case or is bound by the judgment in that case because she was in privity with a party in that case.

parties in response to the motion for summary judgment in that case. In March 2004, the trial court entered its judgment finding that Innovative's conveyance of a portion of its property to the State of Missouri terminated the Easement and entered judgment in favor of Innovative extinguishing Appellants' easement over the existing driveway on Innovative's property. This judgment was not appealed.

Sometime after March 2004, Appellants retained Greg Hasty, a licensed Missouri land surveyor, to perform a boundary survey of the Adamson property. His survey locates and identifies the "existing pipe" used as the point of commencement in the legal descriptions of the recorded deeds on the Adamson property and the Innovative property, but does not utilize it as his commencement point. Hasty did not use the "existing pipe" to commence his survey because the Adamson and the Innovative deeds also referenced this "existing pipe" as marking the northwest corner of the north half of government lot 1 of the southwest quarter of section 19, township 38 north, range 16 west, which corner Hasty determined to actually be located approximately 16.95 feet east and 35.23 feet north of the "existing pipe." Therefore, Hasty utilized this corner as his point of commencement instead of the "existing pipe." This change in the point of commencement places the boundary between the Adamson property and the Innovative property in the Hasty Survey approximately fifteen feet east of the location of the boundary as established by the Arnold description of the property and as shown on the Arnold survey. The Hasty survey, thus, places the existing driveway, as mentioned in the Easement, on the Adamson property instead of the Innovative property.

Based upon the Hasty survey, Appellants filed their petition in the instant case on December 21, 2004, in the Camden County Circuit Court asserting that the common boundary line between themselves and Innovative was not properly established by the survey performed by Arnold. As a result, Appellants sought against Innovative injunctive relief to prevent it from blocking "access to [Appellants'] property by the placement of . . . 'parking blocks' or other barriers to preclude [Appellants] . . . from ingress and egress" on the east side of Appellants' property; a declaratory judgment "in order to set forth and determine the proper boundary line between [Appellants'] and [Innovative's] respective properties"; a judgment quieting Appellants' title to a parcel of real estate described by Hasty and as shown on the Hasty survey; and a judgment ejecting Innovative from Appellants' property as so described and assessing damages for its wrongful possession of that property.

Innovative filed a Motion for Summary Judgment, asserting that Appellants' claims were barred by the doctrine of collateral estoppel, in that Appellants were contesting the location of a boundary line which they admitted to be accurate in both Cases 1 and 2. Further, Innovative argued that Appellants' claim was barred because Appellants had waived their right to challenge the location of the common boundary line description by virtue of their failure to raise the issue as a compulsory counterclaim in either of the previous cases. Appellants opposed the motion, arguing that their claims were not barred because the prior cases were distinct, and Appellants had no notice of the claims brought in this case at the time the prior cases were pending. On January 29, 2007, the Trial Court entered judgment for Innovative. The Trial Court found that Appellants' claims were barred both by the doctrine of collateral estoppel and the compulsory counterclaim rule pursuant to Rule 55.32.

## Facts Related to Arnold:

Arnold is a land surveyor, licensed by the Missouri Division of Professional Registration, and conducts his business within Camden County. In either late February or early March 1998, Arnold agreed to and did provide Appellants with the Arnold survey of the Adamson property. After Appellants' easement was extinguished by Case 2, Appellants contacted a second surveyor, Hasty. The two surveys, as previously discussed, indicated different boundary lines, with Hasty's being more favorable to Appellants' desire to gain access to the back of their property on the east side of the Super Lube building. After receiving Hasty's survey, Appellants filed this action against Arnold contending that Arnold was negligent in surveying the Adamson property and that they were damaged as a direct result of that negligence.

Appellants alleged that the Arnold survey was negligently prepared, in that it did not comply with the Missouri Minimum Standards for Property Boundary Surveys and it "inaccurately described" the common boundary line between Appellants and Innovative.

Appellants attempted to establish Arnold's negligence through the testimony of Hasty. Hasty testified that Arnold failed to meet the Minimum Standards in preparing his survey of the Adamson property and that, had he done so, the common boundary line would have shifted. Specifically, Hasty testified that the existing pipe was not located on the government lot line and was not a monument properly tied to a government corner. Hasty also testified that the legal description of the Adamson property prepared by Arnold did not close mathematically, but did not provide any documentation or otherwise explain the basis for this opinion.[7] Hasty determined that if Arnold had surveyed the Adamson property in accordance with the Minimum Standards, the eastern boundary of the Adamson property would have been located fifteen feet farther to the east.

Arnold testified extensively as to preparation of his survey for Appellants. Arnold also testified extensively as to the Missouri Minimum Standards and how the preparation of his survey complied with each requirement under such standards.

Arnold originally surveyed the property in 1992 and had surveyed it on at least one other occasion before the Adamsons purchased it. Before Arnold surveyed the property for the Adamson purchase at issue in this case, he examined various deeds in the chain of title, deeds of adjoining properties, Missouri Department of Natural Resources records, and other surveys that had been made in the general area. Numerous deeds in the chain of title of the Adamson property specifically reference the "existing pipe" which is the beginning point in the description of the Adamson property and the Innovative property. All of the descriptions contained in the various deeds of record, including deeds of adjoining properties, trace back to the same point where this "existing pipe" was located. The location of this pipe had also become referred to as the Northwest corner of the North half of Government Lot # 1. Arnold testified that, in his professional opinion, based on the information he researched and the work he performed, the "existing pipe" referred to in the chain of title for the Adamson property was the existing government corner at the time he conducted his survey. Arnold testified

---

7. Hasty testified that legal descriptions do not mathematically close when "[t]hey don't form a closed a figure. It would be like basically drawing a square and not—leaving one end open."

that the legal description generated by his survey mathematically closed to within at least two-hundredths of a foot.

On September 21, 2007, the trial court heard evidence on this matter and took the case under advisement. On January 23, 2008, the trial court issued its Judgment along with Findings of Fact and Conclusions of Law ruling Appellants' claims in favor of Arnold. Appellants timely appealed.

Appellants bring six points on appeal, of which the first three apply to the Innovative judgment and the last three to the Arnold judgment. We discuss them in turn.

### *Innovative Judgment—Appeal No. 29007*

Appellants argue that the trial court erred in granting summary judgment in favor of Innovative. When considering appeals from summary judgments, this Court's review is essentially *de novo. ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). The propriety of summary judgment is purely an issue of law, thus, deference to the trial court's order is not required. *Id.* The appellate court must review the "record in the light most favorable to the party against whom judgment was entered." *Id.* The facts supporting the motion are taken as true unless contradicted by the non-moving party's response to the motion. *Id.* The non-moving party is accorded all reasonable inferences from the record. *Id.* "Summary judgment is designed to permit the trial court to enter judgment without delay, where the moving party has demonstrated, on the basis of facts as to which there is no genuine dispute, a right to judgment as a matter of law." *Id.*; *see also* Rule 74.04(c)(1).

In granting summary judgment in favor of Innovative, the trial court stated that "the issue regarding the location of the property line common to [Appellants] and [Innovative] raised by [Appellants] in this action is barred by the doctrine of issue preclusion and the failure to raise this issue as a compulsory counterclaim pursuant to Rule 55.32[.]"

Appellants argue in their first point that the compulsory counterclaim rule does not apply because the claims raised here are distinct and separate from the claims raised in the prior litigation, in that the previous cases involved the interpretation of a written agreement—the Easement—whereas the current cause of action disputes title and location of certain property. Further, Appellants argue that the current claim could not be barred by the compulsory counterclaim rule because these claims were unknown at the time the prior cases were filed with the court and therefore could not have been found to have stemmed from the same transaction or occurrence.

■■■ "The compulsory counterclaim rule is simply the codification of the principles of res judicata and collateral estoppel. Claims and issues which could have been litigated in a prior adjudicated action are precluded in a later action between the same parties or those in privity with them." *Joel Bianco Kawasaki Plus v. Meramec Valley Bank*, 81 S.W.3d 528, 532 (Mo. banc 2002). The function of this rule is to serve as "a means of bringing all logically related claims into a single litigation, through the penalty of precluding the later assertion of omitted claims." *State ex rel. J.E. Dunn, Jr. & Associates, Inc. v. Schoenlaub*, 668 S.W.2d 72, 75–76 (Mo. banc 1984). To determine if a cause of action is single and cannot be split, the trial court should consider: (1) whether the separate actions brought arise out of the same act or transaction; and (2) the same act or transaction; and (2)

whether the parties, subject matter, and evidence necessary to sustain the claim are the same in both actions. *Hollida v. Hollida*, 190 S.W.3d 550, 556 (Mo.App.2006). The term "transaction" has been held to be a term of broad and flexible meaning which is intended to include all the facts and circumstances constituting the foundation of a claim and should be applied so as to bring all logically related claims into a single litigation. *Scott v. Flynn*, 946 S.W.2d 248, 252 (Mo.App.1997)(citing *Harris v. Nola*, 537 S.W.2d 636, 639 (Mo.App. 1976)). The term "subject matter" does not limit the scope of compulsory counterclaims to only those claims which are of the same nature or seek the same relief. *J.E. Dunn, Jr. & Associates, Inc.*, 668 S.W.2d at 75–76. The subject matter of the opposing party's action need only "describe[ ] the physical facts, the things real or personal, the money, lands, chattels, and the like, in relation to which the suit is prosecuted." *Id.* at 75.

Here, the claims made by Appellants in the instant case meet the elements of a compulsory counterclaim which should have been asserted in the prior cases. First, all three cases arise out of the same act or transaction, in that, the facts and circumstances constituting the foundation of each of the claims are identical. In all cases, the origin of the claim was a dispute over certain real property, i.e., the Adamson property and the adjoining easement on the Innovative property, or, in other words, the location of the boundary between the Adamson and Innovative properties. The real property at issue in each case was the same real property. All three cases are based on descriptions of land as surveyed by Arnold and which commence at the same existing pipe. Additionally, the claim in this case—that Appellants actually own the property where the concrete blocks were placed by Innova-

tive as alleged in Case 1—would have provided an additional basis for the trial court in Case 1 to grant Appellants an injunction for removal of the blocks. Likewise, Appellants' assertion of ownership would have provided them a defense to Innovative's claim to the property where the blocks were located in Case 1 and where the easement existed in Case 2. Where the facts are so closely related that a claim made in a later case would have been a proper defense in another case, it is clear that the cases arise from the same transaction or occurrence. *See generally Bankcard Systems, Inc. v. Miller/Overfelt, Inc.*, 219 F.3d 770 (8th Cir.2000) ("When the facts which would support a defense to the original claim would also support a counterclaim, the two arise from the same transaction.").

The premise upon which Appellants' argument is founded is flawed. Appellants state in their brief: "the prior cases did not result in the accrual of the current cause of action due to the fact that they involved solely the interpretation of the written agreement establishing the Easement; not title to the disputed property and *the location of the Shared Line.*" (Emphasis added). Case 1 arose from Innovative's actions in placing concrete parking blocks on the west side of the existing driveway and claiming that it placed those blocks on its property. In order to grant the injunction requested in that case prohibiting Innovative from maintaining those blocks at that specific location, the trial court was required to determine whether or not Innovative had a right to put those blocks at that location. Thus, before reaching the issue of the continued validity of the Easement, the trial court had to first determine the exact location of the existing driveway as referred to in the Easement and whether the parking blocks were located within that existing driveway. It did so and included in its judgment a

specific legal description for the location of the easement, which necessarily included the existing driveway. The legal description for the easement used by the court in its judgment commences at the "existing pipe" and otherwise coincides with and is consistent with both Appellants' and Innovative's legal descriptions as prepared and surveyed by Arnold and as contained in their recorded deeds. Likewise, in Case 2, by asserting the parties' ownership of their respective properties using the Arnold descriptions as located by the Arnold survey, Innovative's claim in that case was premised upon the location of the boundary between the two properties relative to the "existing pipe" as used in both descriptions and as used by the trial court in locating the existing driveway within the easement in Case 1. The allegation by Appellants in the instant case—their ownership of the property where the existing driveway is located—would have, if found to be true, defeated Innovative's claims in both Case 1 and Case 2 and, thus, arise out of the same act or transaction.

■■ Appellants' claim also meets the second requirement of a compulsory counterclaim, which requires that the (1) parties, (2) subject matter, and (3) evidence necessary to sustain the claim are the same in both actions. Here, no contention is made that the parties are not the same in each action. The "subject matter" in each of the cases is also clearly identified as the same real property, i.e., the Adamson/Innovative property boundary as delineated by the existing driveway as mentioned in the Easement and the parking blocks located thereon by Innovative. Appellants argue that the subject matters of the lawsuits are different because they seek different relief. Specifically, Appellants argue that Case 1 and 2 asked the court to interpret the Easement while the case at bar is a boundary dispute. The

"subject matter" referenced in Rule 55.32(a), however, refers to the physical facts common to the suits and does not limit the scope of compulsory counterclaims to only those claims which are of the same nature or seek the same relief. *J.E. Dunn, Jr. & Associates, Inc.*, 668 S.W.2d at 75–76. Here, the Adamson property and its location in relation to the existing driveway is a physical fact common to each of Cases 1 and 2 and the instant case and, thus, all three cases address the same subject matter. The case at bar also requires the presentation of the same evidence that was presented in Cases 1 and 2. This evidence includes the deeds of title to prove ownership by both parties, the Arnold survey to prove boundary lines in accordance with those descriptions, the Easement to prove a contractual relationship between the parties and the testimony regarding the placement or threatened placement of the parking blocks by Innovative within the existing driveway. The pleadings in Cases 1 and 2 described the Adamson property using the legal description developed by Arnold. Appellants admitted in their responsive pleadings their ownership of the property as so described. The admission of their ownership by this legal description supported the use of the Arnold survey and the boundary for the Adamson property shown thereon. The Hasty survey itself, as attached to Appellants' petition in this case, showed the boundaries of the Adamson property as set out in the Arnold survey. In both Case 1 and in this case, it was alleged that Innovative had either actually blocked the existing driveway or was threatening to block the existing driveway with parking blocks. Although the parking blocks were not specifically mentioned in the pleadings of Case 2, the existing driveway was in contention, as it had been described generally in the Easement and specifically located by the judgment in Case 1. If Appel-

lants had been allowed to move forward with this case, the same evidence as generated in Cases 1 and 2 would have been required. The compulsory counterclaim rule is purposefully designed to enhance judicial economy. A court should not hear a case that requires the presentation of the exact same evidence a second, or in this case, third time around. *See Joel Bianco Kawasaki Plus*, 81 S.W.3d at 532.

■ Finally, Appellants claim that the compulsory counterclaim rule should not apply because their claim had not matured at the time of the previous cases. In order for the compulsory counterclaim rule to be applicable, the claim asserted must have matured at the time the pleadings were served in the previous case. *Knight v. M.H. Siegfried Real Estate, Inc.*, 647 S.W.2d 811, 813 (Mo.App.1982) (citing *Magna Pictures Corp. v. Paramount Pictures Corp.*, 265 F.Supp. 144). A claim matures or accrues when the damage sustained is capable of ascertainment, "there exists the right of the injured party to bring and maintain a claim in a court of law," and it is within claimant's power to prosecute a suit to successful judgment. *Knight*, 647 S.W.2d at 813 (quoting *Excel Drug Co. v. Missouri Dept. of Revenue*, 609 S.W.2d 404, 409 (Mo. banc 1980)). Appellants' pleadings in this case admit ownership of the property since 1998. Nevertheless, Appellants argue that they could not have been aware that there was an issue with the boundary lines during Case 1 and Case 2 because Hasty had not yet completed his survey. However, as the property was under Appellants' control since 1998, they had the ability to realize their damages since that time. It was also within Appellants' power to determine that there was a problem and prosecute the

suit to a successful judgment since 1998. The ability to ascertain the damages and not the actual ascertainment thereof is the relevant point from which a court should determine that a claim had matured. Here, the damages were capable of being ascertained as early as 1998, therefore the claim had fully matured at the time of both Cases 1 and 2. The trial court properly denied Appellants' claim as a compulsory counterclaim and granted summary judgment in favor of Innovative. Appellants' first point is denied.[8]

■ *Appellants' second point claims* that the judgment of the trial court is not final because the judgment does not include any description of the property affected by the judgment and therefore requires proof from an external source to adequately describe the property. "In a quiet title action, the judgment must describe with reasonable certainty the real estate affected by the decree." *Taylor v. Cain & Vaughn Assoc., Inc.*, 145 S.W.3d 899, 901 (Mo.App.2004) (citing *Patterson v. Harrison*, 46 S.W.3d 580, 581 (Mo.App. 2001)). Appellants' argument, however, presupposes that the trial court actually adjudicated a dispute over the record title boundaries of the Adamson property. Here, having determined that such dispute was adjudicated in the previous cases, the court never reached the merits of Appellants' challenge to the property boundaries, instead, ruling that any challenge by Appellants was barred by Rule 55.32. Appellants did not present evidence that would cause the trial court to question the clear and unambiguous legal descriptions of the subject properties which are already recorded in the chain of title. The title of the property was wholly unaffected by any

---

8. As Appellants' claims are barred by the compulsory counterclaim rule, we need not consider Appellants' other contention in this point as to whether or not issue preclusion also barred Appellants from proceeding with their case on the merits.

proceedings that occurred in this case. Point two is denied.

Appellants' third point requests that a new trial judge be assigned to hear the case upon remand. Because Appellants' first point, however, was denied and no remand is required, this point is moot. The trial court's judgment in favor of Innovative should be affirmed.

### Arnold Judgment—Appeal No. 29005

■ On appeal of this court-tried case, this Court must affirm the judgment of the trial court if it is supported by substantial evidence, is not against the weight of the evidence, and does not contain an erroneous application or declaration of the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Appellate courts should give deference to the trial court's opportunity to have judged the credibility of the witnesses, and the trial court may believe or disbelieve any oral evidence, even if it is uncontradicted. *Centennial Ins. Co. v. Int'l Motor Car Co.*, 581 S.W.2d 883, 885 (Mo.App.1979).

■ To prevail on their claim for negligence against Arnold, Appellants had the burden of proving that (1) Arnold owed a duty to Appellants; (2) Arnold breached this duty; and (3) Arnold's breach of this duty caused Appellants to suffer damages. *See Hecker v. Missouri Prop. Ins. Placement Facility*, 891 S.W.2d 813, 816 (Mo. banc 1995). The trial court stated in its Findings of Fact and Conclusions of Law that "[Arnold] had a duty to [Appellants]," however, the court concluded that Appellants' negligence action failed due to "insufficient evidence of causation." Specifically, the court noted that it was "not unreasonable for Mr. Arnold to have believed, in his professional judgment, that the 'existing pipe' from which he commenced his survey was the proper commencement point for a survey of the

[Adamson property]." Nevertheless, Appellants claim that they provided sufficient evidence to prove that Arnold was negligent in that he failed to comply with the Minimum Standards for Property Boundary Surveys because there was sufficient and uncontradicted evidence that Arnold failed to ascertain the correct location of the government lot line and failed to determine whether the existing pipe that he claimed was the correct commencement point for the survey was properly tied to a government corner.

■ Although the trial court found that Arnold owed Appellants a duty, on appeal, Appellants argue that Arnold owed them more than a generalized duty of care as a licensed surveyor. The heart of Appellants' claim is that Arnold was negligent because he breached a very specific duty of care which required that Arnold begin his survey at the government corner, regardless of the descriptions in the historical deeds of title to the property, and he failed to do so. Appellants direct this Court's attention to the minimum standards and generally suggest that Arnold's specific duty stems from 20 CSR 2030–16.010, 20 CSR 2030–16.020, and 20 CSR 2030–16.030.

The "Minimum Standards" are certain statutes, rules and regulations, as they pertain to Professional Land Surveyors, the purpose of which is to provide the "surveyor and recipient of boundary surveys with a realistic guideline for adequate survey performance." 20 CSR 2030–16.010. The Minimum Standards further state that they "are not intended to be used in place of professional land surveying judgment." 20 CSR 2030–16.010. While Appellants argue that the Minimum Standards required Arnold to commence his survey from an actual government corner, rather than relying on the language found in over fifty years of deeds that each

referred to the "existing pipe" as being the government corner, we cannot find, and Appellants do not point out to us, any such absolute requirement in the Minimum Standards.

The trial court determined that Arnold acted in a reasonable manner under the circumstances and did not breach any duty to Appellants. We agree. Arnold's survey utilized existing physical monuments to locate the boundaries and corners of the Adamson Property as described in the deed of title. *See generally Ollison v. Village of Climax Springs,* 916 S.W.2d 198, 206 (Mo. banc 1996) ("[I]t is one .of the settled rules of the law of boundaries that calls for courses and distances, quantity, etc., will, in case of a conflict, be controlled by, and yield to, one for a natural object or landmark or permanent artificial monument."). The trial court had before it the various deeds and the testimony submitted by the parties concerning the Adamson property and found that while it is now known that the "existing pipe" was not the actual government corner, there was overwhelming evidence in the chain of record title that the point where the "existing pipe" was located was recognized as the "government corner" in many prior surveys and deeds. Hasty was the only witness who asserted Arnold breached a duty to Appellants. The trial court, however, found Hasty's testimony lacked credibility as he himself had surveyed the same property in 1987 using the "existing pipe" as his commencement point and had come up with results that were nearly identical to those of Arnold. Indeed, Arnold testified that his first survey of this property in 1992 was essentially a retracing of the legal description developed by Hasty for the property as located by Hasty's place-

ment of iron pins in relation to the "existing pipe" in his 1987 survey. Based on this evidence, the trial court concluded it was not unreasonable for Arnold to have believed, in his professional judgment, that the "existing pipe" from which he commenced his survey was the proper commencement point for a survey of the Adamson property and that Arnold's use of the "existing pipe" as a commencing point for his survey was not a breach of any duty Arnold owed Appellants under the Minimum Standards or Missouri law. Based upon the trial court's determination that Hasty's testimony lacked credibility, a determination to which we are obligated to defer, Appellants simply failed to carry their burden of proving that Arnold breached any duty that he may have owed Appellants. Appellants' point four is denied.[9]

Appellants' final point on appeal claims that the trial court abused its discretion in denying Appellants' Rule 55.33(b) motion to amend their pleadings to add a cause of action for breach of oral contract. Rule 55.33(b) states that "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in· all respects as if they had been raised in the pleadings." The decision of whether to allow a moving party to amend its pleadings is committed to the sound discretion of the trial court, and appellate courts will not disturb the trial court's decision absent an obvious abuse of that discretion. *Warren Davis Properties V, L.L.C. v. United Fire and Cas. Co.* 4 S.W.3d 167, 171 (Mo. App.1999).

At the close of all the evidence, Appellants orally moved to amend their

9. Appellants' fifth point claims that the trial court erred in ruling that Appellants failed to prove damages. Due to our denial of Appel-

lants' fourth point for failure to prove a breach of a duty to Appellants, point five is moot and need not be addressed.

petition to conform to the evidence to add a claim for breach of an oral contract because of testimony by Adamson and Arnold that (1) there was a contract by which Arnold was to prepare a survey and legal descriptions for Ronald; (2) Ronald paid Arnold for these services; (3) Arnold failed to perform his obligations under the terms of the contract; and (4) Appellants suffered damages stemming from Arnold's breach of the contract. Appellants argue that their motion should have been granted because Arnold gave his implied consent when he did not object to the above-mentioned evidence as it was admitted at trial. Missouri courts have held that "[f]ailure to timely and specifically object to evidence on the ground that it is beyond the scope of the pleadings constitutes consent for determination of issues thereby raised." *Kackley v. Burtrum*, 947 S.W.2d 461, 465 (Mo.App.1997). However, the implied consent rule only applies where the evidence presented bears only on the new issue and is not relevant to issues already in the case. *Brazell v. St. Louis Southwestern Ry. Co.*, 632 S.W.2d 277, 281 (Mo. App.1982). Here, the alleged relationship that Appellants contend created an oral contract, which they did not plead in their petition, is the same relationship that Appellants alleged in their petition created the "duty" the breach of which allegedly supports their negligence claim.[10] As such, all of the evidence presented by Appellants was directed to issues already raised by the pleadings, and thus the implied consent rule does not apply. We find that the trial court did not abuse its discretion by denying Appellants' motion to amend its pleadings where the evidence to support the would-be cause of action is identical to the evidence submitted to prove the original claim. It is not the purpose of the "trial by implied consent" rule to allow parties to scour the Missouri Approved Instructions to find possible arguments matching the facts they presented at trial. It is the duty of counsel to do this prior to trial. *Associate Engineering Co. v. Webbe*, 795 S.W.2d 606, 610 (Mo. App.1990). Appellants' point six is denied. As to Arnold, the trial court's judgment should be affirmed.

### Decision

The trial court's judgments as to both Innovative and Arnold are affirmed in all respects.

BURRELL, P.J., and RAHMEYER, J., concur.

PARRISH, J., recused.

---

**10.** Appellants' Fourth Amended Petition, upon which the issues in this case were tried, provides in pertinent part:

12. Plaintiff Ronald E. Adamson *engaged the services* of Defendant Arnold and Robert F. Arnold and Associates Land Surveying (hereinafter "Arnold") to prepare a legal description and survey of [the Adamson property] which Plaintiff acquired from Mathis and Evans.

* * * *

53. On or about March 4, 1998, Defendant Arnold promised and *agreed* to provide Plaintiff Ronald Adamson with a detailed and correct survey of the real property conveyed from Mathis and Evans to Plaintiff. (Emphasis added).