Filed 4/27/15  R.S. v. PacificCare Health Ins. Co. CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| R.S.,<br><br>　　　Plaintiff and Appellant,<br><br>　　　v.<br><br>PACIFICARE LIFE AND HEALTH INSURANCE COMPANY,<br><br>　　　Defendant and Respondent. | B254235<br><br>(Los Angeles County<br>Super. Ct. No. BC498816) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Amy D. Hogue, Judge.  Reversed with directions.

Kabateck Brown Kellner, Brian S. Kabateck, Richard L. Kellner and Joshua H. Haffner for Plaintiff and Appellant.

Cooley, Mazda K. Antia, Heather C. Meservy and Blake Zollar for Defendant and Respondent.

_____

## INTRODUCTION

Plaintiff R.S.[1] appeals from a judgment of dismissal following the trial court's order sustaining the demurrer of defendant PacifiCare Health and Life Insurance Company (PacifiCare) to R.S.'s wrongful death and survivor claims on res judicata grounds. This is the third in a series of lawsuits arising from PacifiCare's alleged failure to pay medical health benefits under insurance policies it issued to R.S. and his registered domestic partner R.C. in 2004. On their applications R.S. and R.C. disclosed they were HIV positive and R.C. had AIDS.[2]

PacifiCare filed the first lawsuit in 2008 (*R.S.-I*) in a Missouri court seeking to rescind the insurance policies on the basis of alleged fraud. R.S. and R.C. filed a counterclaim for breach of contract, but dismissed it without prejudice before trial. The court issued a judgment in favor of R.S. and R.C. and ordered PacifiCare to pay medical benefits to R.S. and R.C.; the order was affirmed on appeal.

In 2009 R.S. and R.C. brought a second action in Los Angeles County Superior Court for breach of contract, breach of the covenant of good faith and fair dealing and unfair business practices. The trial court sustained PacifiCare's demurrer, finding that R.S.'s and R.C.'s claims were barred as compulsory counterclaims that were required under Missouri law to be asserted in *R.S.-I*. This district affirmed. (*R.S. v. PacifiCare Life & Health Ins. Co.* (2011) 194 Cal.App.4th 192, 195 (*R.S.-II*).)

After R.C.'s death in 2011, R.S. filed this action alleging claims for the wrongful death of R.C. (Code Civ. Proc., § 377.60) and for damages as R.C.'s survivor (*id.*, § 377.30). The trial court sustained PacifiCare's demurrer without leave to amend,

---

[1]   We refer to the plaintiff and his domestic partner as R.S. and R.C., respectively, following the convention of our colleagues in Division Eight of this district in the prior lawsuit filed by plaintiff, which we refer to as *R.S.-II* below.

[2]   HIV positive refers to Human Immunodeficiency Virus; AIDS is an acronym for Acquired Immune Deficiency Syndrome.

finding R.S.'s claims were barred by res judicata. We conclude the trial court was correct as to R.S.'s survivor claim. However, we find that R.S.'s wrongful death claim asserts a different "primary right" from the rights asserted in *R.S.-I* and *R.S.-II* based on alleged loss of consortium following R.C.'s death, and the trial court erred in sustaining the demurrer on that basis. We therefore reverse the judgment of dismissal.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *PacifiCare's Denial of Benefits*[3]

R.S. and R.C. were registered domestic partners in California. They were dual residents of Los Angeles County, California and Jackson County, Missouri. In 2004 R.C. obtained medical insurance under a policy with PacifiCare, which provided coverage for treatment and medications in connection with his HIV and AIDS diagnosis disclosed to PacifiCare. R.S. also obtained a policy with PacifiCare and made claims for treatment for his infection with HIV.[4] PacifiCare initially paid the claims made by R.C.

In September 2007 PacifiCare stopped paying R.C.'s claims for medical treatment and medications. However, PacifiCare continued to accept payments for policy premiums. From September 2007 through June 2008, PacifiCare repeatedly assured R.C. that his medical expenses would be reimbursed.

In June 2008 R.C. was forced to stop taking his medications and medical treatment because he was unable to pay for them. At that time, R.C.'s health was stable, and he was doing well on his prescribed regimen of a drug cocktail and IVIG therapy. When

---

[3]     The facts in this section are taken from the first amended complaint in this action. For purposes of reviewing the trial court's order, we accept the allegations of the complaint as true. (*City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865.)

[4]     R.S. alleges in the complaints in *R.S.-I* and *R.S.-II* that PacifiCare did not pay his medical expenses, but the complaint at issue in this appeal only alleges damages for PacifiCare's failure to pay R.C.'s medical expenses. Therefore we will address only PacifiCare's failure to pay medical expenses for R.C.

3

PacifiCare stopped paying for his medications and medical treatment, R.C.'s health declined rapidly, resulting in his death on January 10, 2011.

## B. *Litigation Concerning Insurance Benefits*
### 1. *The Missouri Lawsuit (R.S.-I)*
#### a. Complaint

On June 12, 2008 PacifiCare and Golden Rule Insurance Company (Golden Rule) filed a declaratory relief action against R.S. and R.C. in a Missouri court (*R.S.-I*), seeking to rescind and terminate the insurance policies issued to R.S. and R.C.[5]  PacifiCare and Golden Rule alleged that R.S. and R.C. committed fraud by representing on their insurance application to PacifiCare that they were residents of California while representing on their insurance application to Golden Rule that they were residents of Missouri.

#### b. Counterclaim by R.S. and R.C.

R.S. and R.C. filed a counterclaim under Missouri law for breach of contract. They alleged that they were residents of Missouri, and that in 2004 they had purchased policies from PacifiCare and Golden Rule.  They started paying premiums to PacifiCare and Golden Rule at that time.  On or about September 1, 2007 PacifiCare and Golden Rule stopped paying medical benefits, resulting in R.S. and R.C. "incurring medical treatment expenses in the approximate amount of $339,265.00."  R.S. and R.C. also alleged they had continued to pay premiums on the policies totaling approximately $40,000, which PacifiCare and Golden Rule accepted.  However, the insurance companies refused to pay medical benefits under the policies.  R.S. and R.C. sought to recover their unpaid medical bills and premium payments they made for which they received no benefits.

---

[5]     *R.S.-I* and *R.S.-II* involved policies issued by PacifiCare and Golden Rule.  This action only alleges claims against PacifiCare.

c. Preliminary Injunction

On December 19, 2008 the Missouri trial court issued a preliminary injunction requiring PacifiCare and Golden Rule to pay benefits to R.S. and R.C. for their medical conditions.

d. Dismissal of Counterclaim

On June 3, 2009, on the eve of trial, R.S. and R.C. dismissed their counterclaim without prejudice.

e. Trial

On June 16, 2009 the Missouri court conducted a bench trial. On February 2, 2010 the court entered judgment in favor of R.S. and R.C., finding that they did not misrepresent material information on their insurance applications, that PacifiCare and Golden Rule were required to pay benefits under their policies, and that R.S. and R.C. were entitled to permanent injunctive relief requiring the insurance companies to pay benefits under the policies. The court ordered PacifiCare and Golden Rule to provide "ongoing medical care benefits to [R.S. and R.C.]," and that the benefits be retroactive to the effective date of the insurance policies.

f. Appeal

PacifiCare and Golden Rule appealed. On June 19, 2012 the Missouri Court of Appeals issued its decision in *Golden Rule Ins. Co. v. R.S.* (Mo. Ct. App. 2012) 368 S.W.3d 327, affirming the judgment as to PacifiCare and reversing as to Golden Rule. As to PacifiCare, the appellate court found that "there was substantial evidence to support the conclusion that [R.S. and R.C.] maintained dual residencies and therefore did not misrepresent their residency in the PacifiCare application." (*Id*. at p. 339.) The court held "that PacifiCare was not entitled to terminate the insurance policies issued to R.S. and R.C.[] based upon alleged material misrepresentations . . . ." (*Ibid*.)

5

2. *Los Angeles Superior Court Action Filed June 4, 2009* (*R.S.-II*)

   a. Complaint

The day after dismissing their counterclaim in *R.S.-I*, on June 4, 2009, R.S. and R.C. filed suit against PacifiCare and Golden Rule in the Los Angeles Superior Court. (*R.S. v. PacifiCare* (Super. Ct. L.A. County, 2010, No. BC415200).)  The complaint alleged causes of action for (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; and (3) unfair business practices.

In *R.S.-II*, R.S. and R.C. similarly alleged that they had obtained policies from PacifiCare and Golden Rule in 2004.  In September 2007 PacifiCare and Golden Rule stopped paying for medical treatment and medication for R.S. and R.C., but continued accepting premiums.  R.S. and R.C. alleged further that PacifiCare and Golden Rule filed a declaratory relief action in Missouri.  The Missouri trial court issued a preliminary injunction requiring PacifiCare and Golden Rule to pay benefits to R.S. and R.C., but the insurance companies had not paid full benefits since September 2007.

R.S. and R.C. alleged that they "suffered significant damages as a result of [PacifiCare's and Golden Rule's] wrongful conduct including, but not limited to, economic damages, loss of policy benefits, emotional distress, pain and suffering, and damage to [R.S.'s and R.C.'s] health and well-being, in an amount to be proven at trial." In their second cause of action for breach of implied covenant of good faith and fair dealing, R.S. and R.C. also sought punitive damages.


   b. Demurrer Filed by PacifiCare and Golden Rule

PacifiCare and Golden Rule demurred to the complaint on multiple grounds, including that the Missouri judgment barred the complaint because R.S. and R.C. failed to assert their claims in the Missouri action as required by Missouri's compulsory counterclaim law.

On April 9, 2010 the trial court sustained the demurrer and dismissed the complaint with prejudice.  On June 9, 2010 the trial court entered judgment in favor of PacifiCare and Golden Rule.

c.  Decision by This District in *R.S.-II*

R.S. and R.C. appealed.  On April 12, 2011 Division Eight of this district filed its decision in *R.S.-II*, affirming the trial court's judgment.[6]  The court held that "California's application of the full faith and credit clause of the United States Constitution (U.S. Const., art. IV, § 1) to a Missouri state court judgment [requires that] we affirm the superior court's judgment dismissing the complaint of appellants R.C. and R.S. because the Missouri judgment barred their complaint."  (*R.S.-II*, *supra*, 194 Cal.App.4th at p. 195.)

As we discuss further below, the court found that the claims brought by R.S. and R.C. in *R.S.-II* and the claims brought by PacifiCare and Golden Rule in *R.S.-I* "arose from one set of insurance policies and are 'logically related' [citation]," causing them to fall within Missouri's compulsory counterclaim law.  (*R.S.-II*, *supra*, 194 Cal.App.4th at p. 205.)

3.  *Los Angeles Superior Court Action Filed January 9, 2013 (R.S.-III)*

a.  Complaint

R.S. filed this action against PacifiCare in Los Angeles Superior Court on January 9, 2013.  The first amended complaint filed on June 6, 2013 alleges one cause of action for breach of the implied covenant of good faith and fair dealing.  R.S. alleges a claim that PacifiCare tortiously breached the implied covenant of good faith and fair dealing in R.C.'s insurance policy by unreasonably denying medical benefits under the policy, failing to conduct a fair investigation into alleged fraud, and unreasonably seeking to rescind the policy.  R.S. alleges that as a result of PacifiCare's termination of R.C.'s medical benefits, R.C. was unable to obtain adequate medical treatment, leading to his death.

---

[6]     During the pendency of the appeal, on January 10, 2011, R.C. died; R.C.'s sister continued the appeal as R.C.'s representative.  (*R.S.-II*, *supra*, 194 Cal.App.4th at p. 195, fn.1.)

7

As part of his first cause of action, R.S. asserts a claim for wrongful death of R.C. as his registered domestic partner, in which he alleges "the loss of the love, support, society and companionship" of R.C. (wrongful death claim).[7] In addition, R.S. alleges a claim on behalf of R.C.'s estate (Code Civ. Proc., § 377.30) for "economic damages" (survivor claim). R.S. alleges as economic damages that R.C. incurred expenses for a live-in caretaker, policy premiums for other medical insurance, cost of pain medications, cost of medical care, and other out-of-pocket expenses. R.S. also seeks punitive damages.

### b. PacifiCare's Demurrer

PacifiCare filed a demurrer on August 28, 2013 on the ground R.S.'s claims were barred by the doctrine of res judicata based on *R.S.-I* and *R.S.-II* and because they were compulsory counterclaims in *R.S.-I*. On October 21, 2013 the trial court issued its ruling sustaining PacifiCare's demurrer without leave to amend. The trial court found that R.S.'s wrongful death and survivor claims were barred by res judicata.[8]

The trial court first found as to R.S.'s wrongful death claim for loss of consortium that R.S. could have asserted his claim in *R.S.-II*, but failed to do so. The court therefore found that the claim was barred by res judicata, relying on the holding of our Supreme Court in *Boeken v. Phillip Morris USA, Inc.* (2010) 48 Cal.4th 788, 798 (*Boeken*), which we discuss below.

---

[7]     While the complaint does not cite a code section for R.S.'s wrongful death claim, under California law wrongful death claims may be brought by a domestic partner pursuant to Code of Civil Procedure section 377.60, subdivision (a).

[8]     PacifiCare also argued that R.S.'s claims were barred by the statute of limitations and the doctrine of merger, and were procedurally defective. The trial court did not reach these issues because it sustained the demurrer on the basis of res judicata. The court also did not reach PacifiCare's argument that R.S.'s claims were barred as compulsory counterclaims under Missouri law.

With respect to R.S.'s survivor claim for damages, the court found that this claim "arise[s] out of the denial of benefits, the same wrong that was at issue in [*R.S.-I*] and again in [*R.S.-II*]." The court concluded that this claim was therefore also barred by res judicata. The court cited to this district's holding in *R.S.-II* that the claims asserted in *R.S.-I* and *R.S.-II* were "logically related," rejecting R.S.'s argument that he could avoid the bar of res judicata by alleging damages incurred after the Missouri judgment was entered.

### c. Dismissal and Notice of Appeal

The order of dismissal and judgment was entered on May 13, 2014. R.S.'s notice of appeal was filed prematurely on December 20, 2013 — after the order was filed sustaining PacifiCare's demurrer without leave to amend, but before final judgment was entered.[9]

## DISCUSSION

R.S. contends that while the three lawsuits involve the same "wrong," i.e., PacifiCare's denial of medical benefits to R.C., PacifiCare's wrong in this action invaded "primary rights" that are different from those alleged in *R.S.-I* and *R.S.-II*. With respect to his wrongful death claim, R.S. argues that neither *R.S.-I* nor *R.S.-II* alleged damages for loss of consortium, and thus this action concerns a different primary right. R.S. argues as to his survivor claim that Code of Civil Procedure section 377.30 creates a separate cause of action in favor of the heirs that only arises upon the death of the decedent, and thus it too is not barred by res judicata.

---

[9] R.S. has appealed directly from the order sustaining PacifiCare's demurrer without leave to amend before entry of the judgment of dismissal. The court's order of dismissal and judgment was signed and filed on May 13, 2014. We treat R.S.'s premature notice of appeal, filed December 20, 2013, as filed immediately after entry of judgment. (Cal. Rules of Court, rule 8.104(d)(2).)

9

We find the trial court correctly sustained the demurrer as to R.S.'s survivor claim, but find R.S.'s argument persuasive as to his wrongful death claim.

## A. *Standard of Review*

"We independently review the superior court's ruling on a demurrer and determine de novo whether the complaint alleges facts sufficient to state a cause of action or discloses a complete defense. [Citations.]" (*Regents of University of California v. Superior Court* (2013) 220 Cal.App.4th 549, 558; accord, *Rosolowski v. Guthy-Renker LLC* (2014) 230 Cal.App.4th 1403, 1410.) "We give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] Further, we treat the demurrer as admitting all material facts properly pleaded, but do not assume the truth of contentions, deductions or conclusions of law. [Citations.]" (*City of Dinuba v. County of Tulare*, *supra*, 41 Cal.4th at p. 865.)

"We will affirm the ruling if there is any ground on which the demurrer could have been properly sustained. [Citation.]" (*Intengan v. BAC Home Loans Servicing LP* (2013) 214 Cal.App.4th 1047, 1052; see *Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967.) However, if the complaint states a cause of action under "any possible legal theory, the trial court's order sustaining the demurrer must be reversed. [Citation.]" (*Chavez v. Indymac Mortgage Services* (2013) 219 Cal.App.4th 1052, 1057; accord, *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.)

## B. *Application of Res Judicata Under California and Missouri Law*

PacifiCare argues that R.S.'s claims are barred by both the Missouri judgment in *R.S.-I* and the California judgment in *R.S.-II*. We turn first to the question of which law applies to application of res judicata.

10

1. *The law of the state in which a judgment was entered determines whether res judicata applies.*

Whether an action filed in California is barred by a prior judgment under the res judicata doctrine is determined by application of the law of the state in which the judgment was entered.[10]  (*Gagnon Co., Inc. v. Nevada Desert Inn* (1955) 45 Cal.2d 448, 454 [applying Nevada law to determine whether Nevada dismissal with prejudice barred California action]; *In re Kimler* (1951) 37 Cal.2d 568, 572 ["this court should not place upon the [Missouri] judgment a construction which is out of harmony with the decisions of the highest court of the state in which it was rendered," finding that Kimler's discharge in habeas corpus in Missouri was not a res judicata bar to the California proceeding].)

As our Supreme Court held in *Gagnon Co.*, "'The effect of a valid judgment as a conclusive adjudication between the parties and persons in privity with them of facts which were or might have been put in issue in the proceedings is determined by the law of the state where the judgment was rendered.'"  (*Gagnon Co., Inc. v. Nevada Desert Inn*, *supra*, 45 Cal.2d at p. 454, citing Rest., Conflicts, § 450.)

This district in *R.S.-II* similarly found that Missouri law applied to determine whether the action was barred under Missouri's compulsory counterclaim law.  (*R.S.-II*, *supra*, 194 Cal.App.4th at pp. 201-203.)  In reaching this conclusion, the court held: "The full faith and credit clause obligates California to enforce the Missouri judgment to the same effect as if [PacifiCare and Golden Rule] sought the judgment's enforcement in

---

10     The trial court and parties on appeal do not address whether Missouri or California law applies to the determination of res judicata, instead citing only to California cases. While both California and Missouri apply similar elements in addressing the res judicata issue, as we discuss below, California focuses on the identity of the "primary rights" involved in two actions; Missouri cases focus on whether two actions "arise out of the same act or transaction," and whether the "parties, subject matter and evidence" are the same in the two actions.  In addition, the central case on the applicability of res judicata to wrongful death loss of consortium claims relied on by the trial court and the parties, *Boeken*, applies California law.

11

Missouri." (*Id*. at p. 201.) The court proceeded to "[f]ram[e] the question before us as the effect a Missouri court would give the Missouri judgment . . . ." (*Id*. at pp. 201-202.)

In this case, if a Missouri court were to consider the res judicata effect of *R.S.-I,* it would apply Missouri principles of res judicata. Accordingly, so do we. However, the judgment entered in *R.S.-II* was entered in California; thus, California law applies to determine whether R.S.'s claims in this action are barred by the judgment in *R.S.-II*.

### 2. *Res Judicata Under California Law*

Under California law, a cause of action is barred under principles of res judicata if "'"(1) [a] claim or issue raised in the present action is identical to a claim or issue litigated in a prior proceeding; (2) the prior proceeding resulted in a final judgment on the merits; and (3) the party against whom the doctrine is being asserted was a party or in privity with a party to the prior proceeding. [Citations.]'" [Citation.]" (*Boeken*, *supra*, 48 Cal.4th at p. 797.)

Our Supreme Court in *Boeken* held further: "'"As generally understood, "[t]he doctrine of res judicata gives certain conclusive effect to a former judgment in subsequent litigation involving the same controversy." [Citation.] The doctrine "has a double aspect." [Citation.] "In its primary aspect," commonly known as claim preclusion, it "operates as a bar to the maintenance of a second suit between the same parties on the same cause of action. [Citation.]" [Citation.] "In its secondary aspect," commonly known as collateral estoppel, "[t]he prior judgment . . . 'operates'" in "a second suit . . . based on a different cause of action . . . 'as an estoppel or conclusive adjudication as to such issues in the second action as were actually litigated and determined in the first action.' [Citation.]" [Citation.]'" (*Boeken*, *supra*, 48 Cal.4th at p. 797, italics omitted.)

California law analyzes whether a cause of action is "identical" based on an analysis of the "primary right" involved. The primary right theory "provides that a 'cause of action' is comprised of a 'primary right' of the plaintiff, a corresponding 'primary duty' of the defendant, and a wrongful act by the defendant constituting a

12

breach of that duty. [Citation.] . . . [T]he violation of a single primary right gives rise to but a single cause of action. [Citation.] . . . [¶] . . . [T]he primary right is simply the plaintiff's right to be free from the particular injury suffered. [Citation.]" (*Crowley v. Katleman* (1994) 8 Cal. 4th 666, 681; accord, *Hindin v. Rust* (2004) 118 Cal.App.4th 1247, 1257.) Accordingly, "'if a plaintiff alleges that the defendant's single wrongful act invaded two different primary rights, he has stated two causes of action, and this is so even though the two invasions are pleaded in a single count of the complaint.' [Citation.]" (*Hindin*, *supra*, at p. 1258.)

Res judicata bars claims that were brought in a prior lawsuit as well as claims that could have been raised in the former action. (*Busick v. Workmen's Comp. Appeals Bd.* (1972) 7 Cal.3d 967, 975 ["'the prior judgment is *res judicata* on matters which were raised or could have been raised, on matters litigated or litigable'"]; see also *Villacres v. ABM Industries Inc.* (2010) 189 Cal.App.4th 562, 576.) This district held in *Villacres*: """"If the matter was within the scope of the action, related to the subject-matter and relevant to the issues, so that it could have been raised, the judgment is conclusive on it despite the fact that it was not in fact expressly pleaded or otherwise urged. . . .""" (*Villacres*, *supra*, at p. 576.)

### 3. *Res Judicata Under Missouri Law*

"The Missouri Supreme Court has set forth a four prong test to be used when determining whether collateral estoppel is appropriate. [Citation.] First, the issue decided in the first action must be identical to the issue in the second action. [Citation.] Second, the prior litigation must have resulted in a final judgment on the merits. [Citation.] Third, the party to be estopped must have been a party or in privity with a party to the prior adjudication. [Citation.] Finally, the party to the prior adjudication must have had a full and fair opportunity to litigate the issue in the prior suit.[11]

---

[11]      Similarly under California law, for collateral estoppel to apply, there must have been a full and fair opportunity to litigate the issue. (See *Dailey v. City of San Diego*

[Citation.] There is no requirement that the prior and current litigation be identical causes of actions. [Citation.]" (*Smith v. Brown & Williamson Tobacco Corp.* (Mo. Ct. App. 2008) 275 S.W.3d 748, 782, fn. 100; *Hollida v. Hollida* (Mo. Ct. App. 2006) 190 S.W.3d 550, 554.) Missouri law also provides for "a rule against splitting a cause of action, which is a form of *res judicata*. [Citation.] To determine if a cause of action is single and cannot be split, the test is: "(1) whether the separate actions brought arise out of the same act or transaction and (2) whether the parties, subject matter and evidence necessary to sustain the claim are the same in both actions.' [Citation.]" (*Spath v. Norris* (Mo. Ct. App. 2009) 281 S.W.3d 346, 350.)

Under Missouri law, "[t]he res judicata defense precludes not only those issues on which the court in the former suit was required to pronounce judgment, but on all points properly belonging to the subject matter of the litigation and which the parties, exercising reasonable diligence, might have brought into the case at the time. [Citation.]" (*Hollida v. Hollida*, *supra*, 190 S.W.3d at p. 555.)

R.S. does not dispute that there was a final judgment in *R.S.-I* and *R.S.-II*. As to privity, both R.S. and R.C. were parties in *R.S.-I* and *R.S.-II*.[12] The central question

_____

(2013) 223 Cal.App.4th 237, 256 ["'[w]here collateral estoppel is applied "offensively" to preclude a defendant from relitigating an issue the defendant previously litigated and lost, the courts consider whether the party against whom the earlier decision is asserted had a "full and fair" opportunity to litigate the issue'"].)

[12] With respect to R.S.'s survivor claim, R.S. asserts the claim as a representative of R.C. following R.C.'s death. Accordingly, privity is not an issue. As to R.S.'s wrongful death claim, however, one case in this district has found a lack of privity between an heir asserting a wrongful death claim and the decedent asserting a personal injury claim. (*Kaiser Foundation Hospitals v. Superior Court of Los Angeles County* (1967) 254 Cal.App.2d 327, 332-333 [wrongful death claim by heir not barred because no privity with decedent in first lawsuit for personal injuries]; cf. *Secrest v. Pacific Electric Ry. Co.* (1943) 60 Cal.App.2d 746, 749-750 [wrongful death claim by heir barred by first lawsuit for personal injuries by decedent].). The question is more complicated here, where R.S. was a party to both *R.S.-I* and *R.S.-II*, but R.S. asserted claims in those actions based only on PacifiCare's denial of his own benefits. We need not reach the question whether the privity element is met as to R.S.'s wrongful death claim because we find below that this claim is not barred by res judicata on other bases.

14

before us is therefore whether R.S.'s wrongful death and survivor claims raise "identical" issues to those raised in *R.S.-I* and *R.S.-II*. (See *Boeken*, *supra*, 48 Cal.4th at p. 797; *Smith v. Brown & Williamson Tobacco Corp.*, *supra*, 275 S.W.3d at p. 782, fn. 100.)

We discuss R.S.'s survivor and wrongful death claims in turn.

## C. *R.S.'s Survivor Claim Is "Identical" to the Claim Asserted by R.C. in R.S.-II, and Therefore Is Barred by Res Judicata*

The complaint in *R.S.-II* alleged a cause of action seeking damages for PacifiCare's alleged breach of the covenant of good faith and fair dealing by its denial of medical benefits to R.C. (*R.S.-II*, *supra*, 194 Cal.App.4th at p. 196.) In *R.S.-II*, this district held that R.C.'s claim was barred as a compulsory counterclaim he was required to assert in *R.S.-I*. (*R.S.-II*, *supra*, at p. 207.)

R.S. appears to concede that all three actions concern the same wrongful act, stating in his opening brief that "the present action arises out of PacifiCare's wrongful act that formed the basis of [*R.S.-I* and *R.S.-II*] — its wrongful failure to pay for [R.C.'s] medical treatments." Instead, R.S. argues that his survivor claim arises out of a different "primary right." More specifically, R.S. argues that he seeks economic damages that "were incurred at least in part ***after judgment was entered in the Missouri trial court***." We analyze R.S.'s survivor claim under California law because the question before us is whether it is barred by the judgment in *R.S.-II*.[13]

_____

[13]    R.S.'s survivor claim is also barred by the judgment in *R.S.-I* under Missouri law, but given that his claim is identical to that asserted in *R.S.-II*, we analyze it with respect to *R.S.-II*. We note that Missouri applies a similar standard with respect to when a claim for damages arises. (See *R.S.-II*, *supra*, 194 Cal.App.4th at p. 203 [holding that under Missouri law "[t]he fact, rather than the amount or degree, of damages triggers a legal claim"]; *Adamson v. Innovative Real Estate, Inc*. (Mo. Ct. App. 2009) 284 S.W.3d 721, 731 ["[a] claim matures or accrues when the damage sustained is capable of ascertainment"]; *Beasley v. Mironuck* (Mo. Ct. App.1994) 877 S.W.2d 653, 655-656 [trustees barred from collecting attorneys fees for failure to plead attorneys fee claim where they consulted attorneys but full amount of fees not yet determined].)

A cause of action accrues when a person sustains damage that can be ascertained; it is not necessary that the full amount of damages be determined for the claim to arise. (See *Boeken*, *supra*, 48 Cal.4th at p. 799 ["[t]he general rule is that a tort plaintiff may recover prospective damages, as long as it is sufficiently certain that the detriment will occur"]; *Garcia v. Duro Dyne Corp.* (2007) 156 Cal.App.4th 92, 97 [upholding jury verdict for future damages to plaintiff from mesothelioma, holding that "a plaintiff may recover if the detriment is 'reasonably certain' to occur"].)  There is no reason that R.C.'s full amount of damages could not have been ascertained in *R.S.-I* or *R.S.-II*.

Further, R.S.'s survivor claim is brought on behalf of R.C., and thus is identical to the claim brought by R.C. found barred in *R.S.-II*.  As the Fourth District held in *San Diego Gas & Electric Co. v. Superior Court* (2007) 146 Cal.App.4th 1545:  "A survivor claim is also a statutory cause of action; however, unlike a wrongful death claim, the survival statutes do not *create* a cause of action but merely prevent the abatement of the decedent's cause of action and provide for its enforcement by the decedent's personal representative or successor in interest.  [Citation.]"  (*Id*. at p. 1553; see also *Grant v. McAuliffe* (1953) 41 Cal.2d 859, 864 ["[b]efore his death, the injured person himself has a separate and distinct cause of action and, if it survives, the same cause of action can be enforced by the personal representative of the deceased against the tortfeasor" and "[t]he survival statutes do not create a new cause of action, as do the wrongful death statutes"].)

R.S. cites to no authority to support his argument that a claim barred by res judicata during R.C.'s lifetime can be revived upon his death by having the claim asserted by R.C.'s heir, R.S.  We find that R.S.'s survivor claim is therefore barred.


**D.  *R.S.'s Wrongful Death Claim for Loss of Companionship Is Not Barred by the Judgments in R.S.-I or R.S.-II***

PacifiCare argues that R.S.'s wrongful death claim is barred by the judgments in *R.S.-I* and *R.S.-II* under the doctrine of res judicata, and on the basis that it should have been asserted as a compulsory counterclaim under Missouri law in *R.S.-I*.  We disagree.

16

1. *R.S.'s wrongful death claim is not barred under California law on res judicata.*

PacifiCare argues that the trial court correctly found that while R.S. did not assert claims for loss of consortium in *R.S.-I* or *R.S.-II*, he could have brought a claim for loss of consortium in those actions, and therefore his wrongful death claim is barred by res judicata, citing to *Boeken*, *supra*, 48 Cal.4th at page 804. R.S. argues in response that *Boeken* is distinguishable because the wife in that case had filed a lawsuit for loss of consortium prior to her husband's death, but dismissed it with prejudice. R.S. contends that he did not suffer from loss of companionship during R.C.'s lifetime, and therefore he could not have asserted a claim for loss of consortium in *R.S.-I* or *R.S.-II*. We find R.S.'s argument persuasive.

*Boeken* arose out of a personal injury lawsuit filed by Richard Boeken (Richard) against cigarette manufacturer Phillip Morris for causing his lung cancer resulting from smoking cigarettes. A jury awarded Richard compensatory and punitive damages. (*Boeken*, *supra*, 48 Cal.4th at p. 792.) While Richard was still alive, his wife filed a separate common law action against Phillip Morris for loss of consortium, alleging "that she had been 'permanently deprived' of her husband's consortium." (*Ibid*.) The wife subsequently dismissed her action with prejudice. (*Id.* at p. 793.)

A year later, Richard died from lung cancer. The wife then filed a wrongful death action against Phillip Morris under Code of Civil Procedure section 377.60, seeking compensation for the loss of Richard's companionship and affection. (*Boeken*, *supra*, 48 Cal.4th at p. 793.) Phillip Morris demurred, arguing that the wife's wrongful death action was barred by res judicata based on her prior lawsuit for loss of consortium. (*Ibid*.)

Our Supreme Court held that the primary right in the wife's first action for loss of consortium was the same primary right asserted in her wrongful death claim. (*Boeken*, *supra*, 48 Cal.4th at p. 798.) The court held as to the common law action for loss of consortium: "The *primary right* was the right not to be wrongfully deprived of spousal companionship and affection, and the *corresponding duty* was the duty not to wrongfully deprive a person of spousal companionship and affection. The breach was the conduct of defendant Philip Morris that wrongfully induced plaintiff's husband to smoke defendant's

17

cigarettes. . . . Once plaintiff [dismissed her lawsuit for loss of consortium with prejudice], the primary right and the breach of duty (together, the cause of action) had been adjudicated in defendant's favor. Therefore, plaintiff could not later allege the same breach of duty in a second lawsuit against defendant, based on a new legal theory (statutory wrongful death)." (*Ibid*.) The court concluded "that the primary right at issue in plaintiff's current wrongful death action for loss of consortium is the same as the primary right at issue in her previous common law action for loss of consortium, and therefore the res judicata doctrine bars the wrongful death action insofar as it concerns loss of consortium." (*Id*. at p. 804.)

*Boeken* is distinguishable from the instant case on the basis that the wife there filed a lawsuit for loss of consortium prior to filing her lawsuit for wrongful death. Notably, the court did not find that Richard's prior personal injury lawsuit was a bar to his wife's common law claim for loss of consortium or her wrongful death action.[14] Rather, central to the holding in *Boeken* was the fact that the primary right alleged in the first case — loss of consortium — was the identical right alleged in the wrongful death action.

As in *Boeken*, had R.S. asserted a claim in *R.S.-I* or *R.S.-II* for loss of consortium, the same claim in this action would be barred. However, it is undisputed that R.S. did not allege loss of consortium in *R.S.-I* or *R.S.-II*. The trial court found that *Boeken* still applied because R.S. *could have* asserted a claim for loss of consortium in *R.S.-II*, causing him to be barred from bringing a later wrongful death claim for loss of consortium.

Applying the holding in *Boeken* to a situation where the plaintiff did not previously file an action for loss of consortium is contrary to California law that "where a recovery was had and a liability established against defendants in the personal injury

---

14 In *Boeken*, we note that the defendant never challenged the wife's right to bring her first lawsuit for loss of consortium, so the issue of whether it was barred by res judicata was not addressed by the court.

action, the additional action for wrongful death accrues under the provisions of [former] section 377 (now § 377.60) of the Code of Civil Procedure." (*Secrest v. Pacific Electric Ry. Co.*, *supra*, 60 Cal.App.2d at p. 751; accord, *Blackwell v. American Film Co.* (1922) 189 Cal. 689, 693-694 [widow could recover for her own damages in wrongful death action resulting from the death of her husband in automobile accident even though husband recovered damages in prior lawsuit during his lifetime for personal injuries]; *Earley v. Pacific Electric Ry. Co.* (1917) 176 Cal. 79, 81 [widow could maintain wrongful death claim despite settlement by decedent during his lifetime with defendant for his injuries, holding that "the loss to his heirs did not accrue until he died"].)

As the Court of Appeal held in *Brown v. Rahman* (1991) 231 Cal.App.3d 1458: "If the injured party prevailed, the heirs are not precluded from seeking their own damages. Where the judgment was *adverse* to the decedent, however, the contemporary view, and the one to which we subscribe, is that the heirs are collaterally estopped from relitigating the issue." (*Id.* at p. 1461.)

Further, our Supreme Court has made clear that the wrongful death statute is intended to create a new and separate cause of action in favor of the heirs. (See *Ruiz v. Podolsky* (2010) 50 Cal.4th 838, 844; see also *Quiroz v. Seventh Ave. Center* (2006) 140 Cal.App.4th 1256, 1263 [statutorily created wrongful death cause of action "is a new cause of action that arises on the death of the decedent and it is vested in the decedent's heirs"].) As the court held in *Ruiz*: "'Unlike some jurisdictions wherein wrongful death actions are derivative, Code of Civil Procedure section 377.60 "creates a new cause of action in favor of the heirs as beneficiaries, based upon their own independent pecuniary injury suffered by loss of a relative, and distinct from any the deceased might have maintained had he survived. [Citations.]"' [Citation.]" (*Ruiz*, *supra*, at p. 844.)

By contrast, in *Secrest v. Pacific Electric Ry. Co.*, *supra*, 60 Cal.App.2d 746, this district held that the plaintiff's wrongful death action arising from a car accident was barred where the decedent brought a prior lawsuit for personal injuries from the accident which resulted in a verdict for the defendants, because the final judgment in the personal injury action for defendants "'negatives the existence of conditions which would charge

19

the defendant with responsibility for the death.'" (*Id.* at p. 750, italics omitted.) The court distinguished the holdings in *Blackwell* and *Earley* on the basis that in those cases there was not an adverse decision on the merits finding that the defendants were free from negligence or the decedent contributed to his own injuries. (*Id.* at pp. 748-749; see also *Evans v. Celotex Corp.* (1987) 194 Cal.App.3d 741, 745 [defense verdict in personal injury case for worker's asbestos exposure for lack of proof of causation barred later wrongful death claim by heirs].)

In this case, while the demurrer was sustained in *R.S.-II*, the ruling was based on the judgment in *R.S.-I*, not a finding that PacifiCare did not owe a duty to R.C. Thus, like *Blackwell* and *Earley*, and contrary to *Secrest* and *Evans*, there was a determination that PacifiCare did owe a duty to provide insurance benefits to R.C.

2. *R.S.'s wrongful death claim is not barred under Missouri law on res judicata.*

Under Missouri law, a wrongful death action is likewise not barred even where the decedent previously brought a lawsuit for personal injuries. (*Smith v. Brown & Williamson Tobacco Corp.*, *supra*, 275 S.W.3d at p. 782.) In *Smith*, the court reviewed case law from around the country, and concluded: "we hold that, pursuant to the language employed in [Missouri Revised Statutes] section 537.080 [(2000)] [for wrongful death], the wrongful death action is not barred in this case, despite the fact that Ms. Smith brought a personal injury action for the injuries eventually resulting in her death during her lifetime."[15] (*Ibid.*, fn. omitted.)

---

[15]    The Missouri wrongful death statute (Mo. Rev. Stat., § 537.080, subd. (1)) provides: "Whenever the death of a person results from any act, conduct, occurrence, transaction, or circumstance which, if death had not ensued, would have entitled such person to recover damages in respect thereof, the person or party who . . . would have been liable if death had not ensued shall be liable in an action for damages, notwithstanding the death of the person injured . . . ." Section 537.080 lists factors to be considered in determining damages for various types of costs, including funeral expenses, consortium, companionship, and financial support.

The California statute (Code Civ. Proc., § 377.61) states: "[D]amages may be awarded that, under all the circumstances of the case, may be just . . . ." California courts

The court in *Smith* based its conclusion on the holding by the Missouri Supreme Court "that the wrongful death statute creates a new cause of action and does not revive an action belonging to the decedent." (*Smith v. Brown & Williamson Tobacco Corp.*, *supra*, 275 S.W.3d at p. 765, citing *O'Grady v. Brown* (Mo. 1983) 654 S.W.2d 904, 910; see also *Sennett v. National Healthcare Corp.* (Mo. Ct. App. 2008) 272 S.W.3d 237, 244-245 [wrongful death cause of action is ""'"a new and distinct cause of action created purely by statute, which sprang into being and accrued to plaintiffs as the designated beneficiaries at the moment, but not until the moment, that the death of the deceased occurred"'"'"].)

Notably, Missouri law provides for a more expansive wrongful death claim than under California law. In *Smith*, the decedent had asserted claims for negligence and strict liability against the defendants for their failure to warn her of the dangers from smoking cigarettes. The court granted summary judgment in favor of the defendant, finding that the decedent could not prove causation, i.e., that if she had been warned she would have altered her smoking behavior. (*Smith v. Brown & Williamson Tobacco Corp.*, *supra*, 275 S.W.3d at pp. 759-760.) Even though the decedent suffered an adverse decision in her lawsuit, the court found that the heirs had a separate wrongful death claim for the decedent's injuries. (*Id*. at p. 782.)

Under Missouri law as well as California law, the primary rights at issue in *R.S.-I* and *R.S.-II* — the right of R.C. and R.S. not to be harmed by PacifiCare's denial of their medical benefits — are separate "primary rights" from R.S.'s right not to be permanently deprived of R.C.'s "spousal companionship and affection." (*Boeken*, *supra*, 48 Cal.4th at p. 804; accord, *Smith v. Brown & Williamson Tobacco Corp.*, *supra*, 275 S.W.3d at

---

have specified available damages. As the court held in *Boeken v. Phillip Morris USA Inc.* (2013) 217 Cal.App.4th 992, "damages for wrongful death 'are measured by the financial benefits the heirs were receiving at the time of death, those reasonably to be expected in the future, and the monetary equivalent of loss of comfort, society, and protection. [Citation.]' [Citation.]" (*Id.* at p. 997.)

p. 782.)  Accordingly, the judgments in *R.S.-I* and *R.S.-II* do not bar R.S.'s wrongful death claim.

3. *R.S. was not required to assert his wrongful death claim in R.S.-I as a compulsory counterclaim under Missouri Law.*[16]

This district in *R.S.-II* held that the claims asserted by R.S. and R.C. were precluded by the Missouri judgment under the full faith and credit clause of the United States Constitution (U.S. Const., art. IV, § 1) and Code of Civil Procedure section 1913[17] as part of California's duty to give effect to a sister-state judgment.  (*R.S.-II*, *supra*, 194 Cal.App.4th at p. 195.)  In reaching this holding, the court applied Missouri law on the filing of compulsory counterclaims.  Missouri Supreme Court Rules, rule 55.32(a) provides:  "A pleading shall state as a counterclaim any claim that at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction."[18]

The Missouri courts have held that rule 55.32(a) "is simply the codification of the principles of res judicata and collateral estoppel.  Claims and issues which could have been litigated in a prior adjudicated action are precluded in a later action between the

---

[16]    The trial court did not reach this issue because it found R.S.'s wrongful death claim was barred by res judicata.

[17]    Code of Civil Procedure section 1913, subdivision (a), provides: "the effect of a judicial record of a sister state is the same in this state as in the state where it was made, except that it can only be enforced in this state by an action or special proceeding."

[18]    "[Missouri Supreme Court Rules, [r]]ule 55.32(a) contains three exceptions to the rule requiring the filing of mandatory counterclaims: (1) another action was pending; (2) quasi in rem proceedings; and (3) actions to approve a settlement.  Missouri law thus differs from California [law] which, by statute (Code Civ. Proc., § 426.60), states that the mandatory cross-complaint rule does not apply in a declaratory relief action."  (*R.S.-II*, *supra*, 194 Cal.App.4th at p. 207, fn. 8.)

22

same parties or those in privity with them." (*Joel Bianco Kawasaki Plus, Inc. v. Meramec Valley Bank* (Mo. Banc 2002) 81 S.W.3d 528, 523, bold omitted; accord, *Adamson v. Innovative Real Estate, Inc.*, *supra*, 284 S.W.3d at p. 728; see also *R.S.-II*, *supra*, 194 Cal.App.4th at p. 203.) Further, "[t]he function of this rule is to serve as 'a means of bringing all logically related claims into a single litigation, through the penalty of precluding the later assertion of omitted claims.' [Citation.]" (*Adamson*, *supra*, at p. 728, citing *State ex rel. J.E. Dunn, Jr. & Associates, Inc. v. Schoenlaub* (Mo. Banc 1984) 668 S.W.2d 72, 75.)

As the court held in *Adamson*: "To determine if a cause of action is single and cannot be split, the trial court should consider: (1) whether the separate actions brought arise out of the same act or transaction; and (2) whether the parties, subject matter, and evidence necessary to sustain the claim are the same in both actions. [Citation.] The term 'transaction' has been held to be a term of broad and flexible meaning which is intended to include all the facts and circumstances constituting the foundation of a claim and should be applied so as to bring all logically related claims into a single litigation." (*Adamson v. Innovative Real Estate, Inc.*, *supra*, 284 S.W.3d at pp. 728-729.)

PacifiCare argues that R.S. was required to assert his wrongful death claim for loss of consortium in *R.S.-I* because his claim for loss of consortium arose out of the same "act or transaction" (denial of insurance benefits) and was "logically related" to the claims asserted in *R.S.-I*. Further, PacifiCare argues that R.C. "was gravely ill and near death" at the time of *R.S.-I*, and therefore the loss of consortium claim was capable of ascertainment at that time.[19] (See *Adamson v. Innovative Real Estate, Inc.*, *supra*, 284 S.W.3d at p. 731.)

---

[19] As the court held in *R.S.-II*, "[i]n Missouri, 'a claim falls within the limits of the compulsory counterclaim rule if it has "matured" at the time of the pleading and for this purpose "matured" has the same meaning as the word "accrued" in statutes of limitations. [Citation.] Therefore, a counterclaim has accrued and is fully matured when the damage resulting therefrom is sustained and is capable of ascertainment. [Citations.] "Ascertainment" refers to the fact of damage rather than to the precise amount.'

As we discuss above, however, under Missouri principles of res judicata, a wrongful death claim is not barred by the prior personal injury claim for damages by the decedent during his lifetime. Because Missouri's compulsory counterclaim law is premised on the principles of res judicata and collateral estoppel, then just as R.S.'s wrongful death claims are not barred by res judicata, they cannot be barred for failure to assert them in *R.S.-I*. This is consistent with Missouri law that a wrongful death cause of action accrues at the time of death of the decedent. (See *Sennett v. National Healthcare Corp.*, *supra*, 272 S.W.3d at p. 245 [wrongful death claim found to accrue "not until the moment[] that the death of the deceased occurred"].)[20]

---

[Citations.]" (*R.S.-II*, *supra*, 194 Cal.App.4th at p. 204, citing *Beasley v. Mironuck*, *supra*, 877 S.W.2d at pp. 655-656.)

[20] PacifiCare argues that R.S.'s wrongful death claim accrued at the time R.C.'s injuries became "'life threatening.'" However, R.S. has not alleged that he suffered from loss of consortium prior to R.C.'s death. Therefore, it would in fact have been difficult to ascertain the damage due to his loss of companionship at a time when, according to the allegations of the complaint, he was not suffering loss of companionship.

## DISPOSITION

The judgment is reversed.  The trial court is directed to vacate the order sustaining PacifiCare's demurrer and to enter a new order overruling the demurrer with respect to R.S.'s wrongful death claim and sustaining the demurrer as to R.S.'s survivor claim.  R.S. is to recover his costs on appeal.

FEUER, J.*

We concur:

PERLUSS, P. J.

ZELON, J.

---

*       Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.